A09A1861. UNITED CAPITAL FINANCIAL OF ATLANTA, LLC
v. AMERICAN INVESTMENT ASSOCIATES, INC.

(691 SE2d 272)

DOYLE, Judge.

United Capital Financial of Atlanta, LLC, and American Investment Associates, Inc., asserted competing claims to the excess funds from the tax sale of certain property belonging to David W. Fletcher. Following a bench trial, the trial court awarded the excess funds to American Investment. United Capital appeals, and we reverse because United Capital, as the creditor who redeemed Fletcher's property from the purchaser at the tax sale, held a first priority lien

---

against the property.

The record shows that Keith Echols, in his capacity as tax commissioner for Hall County, filed a complaint for interpleader against Fletcher, Consolidated Lien Services, LLC, United Capital, and others alleging that certain property belonging to Fletcher had been sold on October 2, 2007, for the purpose of paying Hall County and State of Georgia property taxes for the year 2006. According to the complaint, the property was sold to Consolidated Lien for $21,100, leaving an excess of $20,495.61 after payment of overdue taxes, penalties, interest, and costs of sale. The complaint further showed that United Capital redeemed the property from Consolidated Lien for the redemption amount of $25,320, and that Consolidated Lien then conveyed the property back to Fletcher through a quitclaim deed.

United Capital and American Investment each filed a claim for the excess funds. In light of the conflicting claims to the funds, the tax commissioner paid the excess funds into the registry of the court and prayed that the court order the defendants to interplead the action. Following a bench trial, the trial court awarded the excess funds to American Investment, and United Capital appeals.

"In a bench trial[,] the court sits as the trier of fact[,] and his findings shall not be set aside unless clearly erroneous. . . . However, the court's judgment in a non-jury trial will be reversed where it is apparent that it rests on erroneous reasoning or on an erroneous legal theory."[1] United Capital did not file a transcript of the trial. "[A]bsent a transcript, we must presume that the trial court's findings of fact are correct."[2]

As applicable to this appeal, the trial court found that

> United Capital . . . became a creditor of . . . Fletcher via an assignment of a debt for $71.00 from Dynamic Recovery Services, a collection agency, on the day of the tax sale. United Capital . . . had never obtained a judgment or a lien for this debt by the time it redeemed the property.

Further,

> Defendant American Investment . . . obtained a judgment against . . . Fletcher on March 12, 1992 for $6,669.87 plus interest, and Writ of Fi. Fa. was issued on July 14, 1992. The

---

[1] (Citation and punctuation omitted.) *CRS Sirrine v. Dravo Corp.*, 213 Ga. App. 710, 721 (4) (445 SE2d 782) (1994).

[2] *State of Ga. v. Davis*, 292 Ga. App. 387, 389 (665 SE2d 350) (2008). The lack of a transcript is not fatal to the appeal because at issue are questions of law. *Vance v. Vance*, 246 Ga. 456, 459 (4) (271 SE2d 853) (1980).

amount due pursuant to this judgment as of October 2, 2007, the date of the tax sale, was $29,000.23.

1. After a tax sale, if there are any excess funds after paying taxes, costs, and expenses of the sale, the tax commissioner is authorized to file an interpleader action in superior court for payment of such excess funds, which "shall be distributed by the superior court to the intended parties, including the owner, as their interests appear and in the order of priority in which their interests exist."[3] The trial court awarded the excess funds to American Investment in this case because its judgment was first in time and because United Capital failed to establish a first lien under OCGA § 48-4-43. United Capital contends that the trial court erroneously construed other statutes to deny it the first priority lien established by OCGA § 48-4-43, contrary to controlling authority legislative intent, and principles of equity. We agree that the trial court misapplied OCGA § 48-4-43.

OCGA §§ 48-4-40 through 48-4-48 address the redemption of property sold for taxes. Pursuant to OCGA § 48-4-40, if property is sold under an execution issued for the collection of state and certain local taxes, "the defendant in fi. fa. or any person having any right, title, or interest in or lien upon such property may redeem the property from the sale. . . ." "If the property is redeemed, the tax sale is essentially rescinded and a quitclaim deed is executed by the tax sale purchaser back to the owner of the property at the time of levy and sale."[4] OCGA § 48-4-43 provides that if the redemption has been made by "any creditor of the defendant or by any person having any interest in the property," then the amount expended by the creditor or interested person constitutes a first lien on the property, and "shall be repaid prior to any other claims upon the property," so long as the quitclaim deed to the defendant in fi. fa. is recorded as required by law.[5]

We have previously analyzed the first or "super-lien"[6] established by OCGA § 48-4-43 in the context of competing claims to excess funds from a tax sale. In *Wester v. United Capital Financial of Atlanta*,[7] we concluded that, notwithstanding the general rule that the timing of the obtaining and recording of judgment liens is

---

[3] OCGA § 48-4-5.

[4] *Nat. Tax Funding v. Harpagon Co.*, 277 Ga. 41, 42 (1) (586 SE2d 235) (2003).

[5] OCGA §§ 48-4-43; 48-4-44. The trial court found that in this case the quitclaim deed was recorded as required by law.

[6] *Nat. Tax Funding*, 277 Ga. at 42 (1).

[7] 282 Ga. App. 392 (638 SE2d 779) (2006).

dispositive in determining competing lienholders' rights,[8] the appellee's status as the redeemer of the property afforded it a first priority lien in the amount it paid to redeem the property.[9] Accordingly, we found that the trial court correctly directed that the excess funds held in the registry of the court be paid to the redeeming creditor.[10] United Capital argues that *Wester* controls here.

Unlike the appellee in *Wester*, United Capital was not a lienholder with respect to the property at the time of the redemption, nor did the trial court find it had any other interest in the property. The trial court found United Capital's lack of a lien or interest in the property controlled for purposes of OCGA § 48-4-43, concluding that "the statutory scheme seems to be that a judgment[ ] or lienholder may redeem the property to create a super-lien, not that merely any creditor of the taxpayer may redeem the property to create a super-lien," and that United Capital, as a creditor without a lien, had not otherwise satisfied the condition of OCGA § 48-4-41 contemplating a sale of the property after redemption under a judgment in favor of the creditor.

"Laws of this state governing the right to redeem are to be construed liberally and most favorably to persons allowed by the statute to redeem."[11] Under OCGA § 48-4-43, the first priority lien for the redemption price arises as to "any creditor of the defendant [in fi. fa.]" who redeems the property. The trial court found as a matter of fact that United Capital was Fletcher's creditor. "Well-established principles of statutory construction require that the literal meaning of the words of a statute must be followed unless the result is an absurdity, contradiction, or such an inconvenience that it is clear that the legislature must have intended something else."[12] It follows that, based on a literal interpretation of the statute, United Capital had a first lien for the amounts expended for the redemption.

There are some apparent inconsistencies in the statutory scheme, but we conclude that none requires a reinterpretation of the literal language of OCGA § 48-4-43. Notably, OCGA § 48-4-40 suggests that the only persons who may redeem property sold in a tax sale include "the defendant in fi. fa. or any person having any right, title, or interest in or lien upon such property," which would appear to exclude a creditor without a lien, right, title, or interest in the property from exercising a right of redemption. Nevertheless, and

---

[8] See OCGA § 48-4-5.

[9] *Wester*, 282 Ga. App. at 393.

[10] Id. at 394.

[11] *Dixon v. Conway*, 262 Ga. 709, 710 (425 SE2d 651) (1993).

[12] (Citation and punctuation omitted.) *Effingham County Bd. of Tax Assessors v. Samwilka, Inc.*, 278 Ga. App. 521, 522 (629 SE2d 501) (2006).

pretermitting whether it was required to do so, the purchaser at the tax sale permitted United Capital to redeem the property, which the purchaser quitclaimed back to Fletcher. By virtue of OCGA § 48-4-41, which contemplates the redemption of a creditor without a lien, and OCGA § 48-4-43, which governs the effect of a redemption, including that by "any creditor," the law necessarily allowed United Capital to redeem the property.

As between OCGA §§ 48-4-41 and 48-4-43, OCGA § 48-4-41 provides that "[i]f the property is redeemed by a creditor of the defendant in fi. fa. who has no lien," the creditor has a claim against the property for the amounts advanced to redeem the property if "[t]here is any sale of the property after the redemption under a judgment in favor of the creditor." OCGA § 48-4-41 does not address, however, the priority of this claim and whether it constitutes a separate lien, which are matters addressed by OCGA § 48-4-43. There is not such an absurdity, contradiction, or inconvenience in the application of OCGA § 48-4-43, as written, to require us to interpret "any creditor" to mean other than what it says. It follows that the effect of the redemption was to return title to the property to Fletcher, subject to all liens existing at the time of the tax sale,[13] but that United Capital had a first priority lien for the amounts it expended to redeem the property. Under *Wester*, the first priority of United Capital's lien entitled it, as the redeeming creditor, to priority over American Investment in the distribution of the excess funds to the extent of the redemption price.[14]

2. American Investment contends that the trial court erred in holding that United Capital became Fletcher's creditor via an assignment of a debt from Dynamic Recovery Services. But American Investment did not assert its claim of error through a cross-appeal. Further, its claim is not supported by reference to the record, but by the argument that United Capital failed to present certain evidence at trial, notwithstanding the lack of a transcript before this court.[15] Viewing American Investment's claim as material to the claims of error asserted by United Capital, and thus reviewable notwithstanding the lack of a cross-appeal,[16] American Investment

---

[13] See OCGA § 48-4-43 ("When property has been redeemed, the effect of the redemption shall be to put the title conveyed by the tax sale back into the defendant in fi. fa., subject to all liens existing at the time of the tax sale.").

[14] See *Wester*, 282 Ga. App. at 393-394.

[15] See *Davis*, 292 Ga. App. at 389 (trial court's findings of fact presumed correct in absence of a transcript).

[16] See *Brady v. Elevator Specialists*, 287 Ga. App. 304, 306 (653 SE2d 59) (2007) ("[A] ruling that becomes material to an enumeration of error urged by an appellant may be considered by the appellate court without the necessity of a cross-appeal.") (punctuation omitted).

nevertheless does not present any basis for this court to find that the trial court erred in its finding that United Capital was Fletcher's creditor.

*Judgment reversed. Blackburn, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 16, 2010.

*Richard C. Bellows*, for appellant.
*Michael A. Petersen*, for appellee.