A11A1792. BRINA BAY HOLDINGS, LLC v. ECHOLS et al.
(723 SE2d 533)

PHIPPS, Presiding Judge.

Brina Bay Holdings, LLC ("Brina Bay") filed a money rule petition against Keith Echols ("Echols"), in his capacity as tax commissioner and ex-officio sheriff of Hall County, and Travelers Casualty and Surety Company of America ("Travelers"), as the surety of Echols's bond, to recover excess funds from a tax sale and interest thereon. The trial court granted summary judgment to Echols and Travelers and denied summary judgment to Brina Bay. Brina Bay appeals the trial court's grant of summary judgment to Echols and Travelers. For the reasons that follow, we affirm.

On appeal from the grant of summary judgment this [c]ourt conducts a de novo review of the evidence to determine

---

whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[1]

The underlying material facts are not in dispute. On December 1, 2009, Echols sold certain real property in a tax sale to satisfy outstanding ad valorem property tax liens against the property. The tax sale of the property generated more proceeds than necessary to satisfy the tax liens. On that same day, Echols mailed notice of the excess funds to the record owner of the property and to the record holders of liens affecting the property which, at that time, did not include Brina Bay. The record owner of the property submitted to Echols a claim, dated February 26, 2010, for the excess tax sale funds. No one else submitted a claim. One week from that date (on March 5, 2010), Echols issued a check for the excess tax sale funds to the record owner of the property.

On May 6, 2010, Brina Bay became a holder of a lien against the subject property and a creditor, after acquiring two transfers and assignments of liens involving the property. On May 11, 2010, "as the holder of a lien against the subject property and as a creditor pursuant to OCGA § 48-4-43," Brina Bay paid money to redeem the property, and a quitclaim deed of redemption (to the record owner of the property) was recorded in the county's deed books. Thereafter, by letters dated May 18, 2010, Brina Bay submitted claims to Echols pursuant to OCGA § 15-13-3[2] for the excess tax sale funds. When Echols denied Brina Bay's claims, the case at bar was filed.

After a hearing, the trial court found that Echols had fulfilled his obligation to notify those with an interest in the property of the excess tax sale funds, and that only the record owner of the property had made a claim for the funds. The court found that Brina Bay had no interest in the property at the time of the tax sale or at the time notice was sent, and that when Brina Bay thereafter made a claim, Echols no longer had funds to disburse. The court added that since the excess funds already had been disbursed at the time Brina Bay acquired liens on the property, Brina Bay "only took the rights to the property and to collect on the lien, not to the excess funds" from the

---

[1] *Jones v. Kirk*, 290 Ga. 220, 221 (719 SE2d 428) (2011) (citation omitted).

[2] OCGA § 15-13-3 (a) pertinently provides:

If any sheriff, coroner, magistrate, constable, clerk of the superior court, or attorney at law fails, upon application, to pay to the proper person or his attorney any money he may have in his hands which he may have collected by virtue of his office, the party entitled thereto or his attorney may serve such officer with a written demand for the same. If not then paid, for such neglect or refusal the officer shall be compelled to pay interest . . . unless good cause is shown to the contrary.

tax sale.

1. Brina Bay contends that "[b]y virtue of its redemption of the Property, Brina Bay acquired a first-priority lien against the Property *and* a first-priority claim to the excess tax sale proceeds pursuant to OCGA § 48-4-43."[3] Brina Bay relies upon *United Capital Financial of Atlanta v. American Investment Assoc.*[4] and *Wester v. United Capital Financial of Atlanta.*[5]

Brina Bay further asserts that despite the fact that it submitted a demand for the excess proceeds on May 18, 2010 (after the funds had already been paid out), Echols should not have paid the excess tax sale funds to the record owner of the property because, at the time, there were at least three unsatisfied liens against the record owner of the property and the property itself "that represented higher-priority claims to the excess proceeds than any claim" held by the record owner of the property. Thus, Brina Bay contends, Echols must pay it (Brina Bay) the full amount of the excess funds. Brina Bay does not point to any violation of law by Echols, but asserts that Echols was authorized to interplead the excess funds, but did not.

OCGA § 48-4-5 (a) governs the payment of excess funds after a tax sale, and it pertinently provides:

> If there are any excess funds after paying taxes, costs, and all expenses of a sale made by the tax commissioner, tax collector, or sheriff, or other officer holding excess funds, the officer selling the property shall give written notice of such excess funds to the record owner of the property at the time of the tax sale and to the record owner of each security deed affecting the property and to all other parties having any recorded equity interest or claim in such property at the time of the tax sale.

OCGA § 48-4-5 (b) authorizes, but does not require, the tax commissioner, sheriff, or other officer to file an interpleader action for the payment of the amount of such excess tax sale funds: "The tax commissioner, tax collector, sheriff, or other officer *may file, when deemed necessary*, an interpleader action in superior court for the

---

[3] OCGA § 48-4-43 pertinently provides:

When property has been redeemed, the effect of the redemption shall be to put the title conveyed by the tax sale back into the defendant in fi. fa., subject to all liens existing at the time of the tax sale. If the redemption has been made by any creditor of the defendant or by any person having any interest in the property, the amount expended by the creditor or person interested shall constitute a first lien on the property and . . . shall be repaid prior to any other claims upon the property.

[4] 302 Ga. App. 400 (691 SE2d 272) (2010).

[5] 282 Ga. App. 392 (638 SE2d 779) (2006).

payment of the amount of such excess funds."[6]

It is uncontroverted that at the time of the tax sale, at the time Echols notified the record owner of the property and record lien holders of the excess tax sale funds, and at the time Echols paid the excess tax sale funds to the record owner of the property, Brina Bay had no recorded lien or interest in the property. Echols acted in accordance with his statutory obligation to give "notice of such excess funds to the record owner of the property at the time of the tax sale and to the record owner of each security deed affecting the property and to all other parties having any recorded equity interest or claim in such property at the time of the tax sale."[7] After Echols fulfilled his obligation to give notice to the record property owner and lien holders, the property owner submitted the only claim to Echols for the excess tax sale funds, and Brina Bay has failed to show that more was required of Echols before he disbursed the funds. Apparently, after having notified the appropriate parties and receiving a claim for the excess funds by only one party, Echols did not deem it necessary to file an interpleader action.[8]

Brina Bay's reliance on *American Investment Assoc.*[9] and *Wester*[10] is misplaced, as those cases do not hold, as Brina Bay contends, that a lien holder in Brina Bay's position was, by virtue of having redeemed the property, a first-priority lien holder with a first-priority claim to the excess tax sale proceeds. *American Investment Assoc.* concerned an interpleader action wherein the redeeming creditor, who had acquired status as a creditor (of the record owner of the property) on the day of the tax sale,[11] held a first-priority lien for the amounts it expended to redeem the property and thus was entitled to excess tax sale funds to the extent of the redemption price.[12] *Wester*[13] involved an interpleader action wherein one (of two) judgment lien holder, with a conflicting claim to excess tax sale

---

[6] (Emphasis supplied.)

[7] OCGA § 48-4-5 (a).

[8] *American Investment Assoc.*, supra at 401 ("In light of the conflicting claims to the funds, the tax commissioner paid the excess funds into the registry of the court and prayed that the court order the defendants to interplead the action.").

[9] Supra.

[10] Supra.

[11] Compare *Barrett v. Marathon Investment Corp.*, 268 Ga. App. 196, 198 (1) (601 SE2d 516) (2004) (because the right to excess funds from a tax sale is freely alienable, a delinquent taxpayer is entitled to convey his interest in excess tax sale funds to a third party; while the successor in right, title and interest to the owner-defendant in fi. fa. was not entitled to receive the excess funds on the date of the tax sale because as of that date it neither owned the property nor held a lien against the property, successor later became entitled to the funds through a quitclaim deed).

[12] *American Investment Assoc.*, supra at 401-404 (1).

[13] Supra.

funds, redeemed property and acquired a first lien on the property in the amount it paid to redeem the property, over the other lien holder who held a lien that was prior in time to the redeemer's.[14]

"Where money is in the hands of an officer, he may pay it over to the plaintiff by whose process it was raised, unless other claimants deposit their liens with him. . . ."[15] Here, Brina Bay's petition and demands for the excess tax sale funds were made pursuant to OCGA § 15-13-3, which pertinently required Echols[16] to, upon application, pay to the proper person or his attorney any money he may have in his hands which he may have collected by virtue of his office; and if, after such demand was "not then paid, for such neglect or refusal," was Echols compelled to pay interest "upon the sum he has in his hands from the date of the demand. . . ."[17]

It is uncontroverted that at the time Brina Bay made demand, Echols no longer had any of the excess tax sale money. Thus, it was not by neglect or refusal that Echols did not pay the excess funds to Brina Bay. On the contrary, Echols showed good cause why he did not pay Brina Bay the excess funds — because he had already paid them to the record owner of the property, the only party who had filed a claim for the funds. Therefore, the undisputed facts, viewed in the light most favorable to Brina Bay, authorized the trial court's grant of summary judgment to Echols.[18]

2. Brina Bay contends that the trial court erred in granting summary judgment to Travelers, because as surety on the bond that Echols was required to maintain, Travelers is liable to Brina Bay for any amounts owed to Brina Bay by Echols as a result of Echols's wrongful and unlawful act. However, as the surety on the bond for Echols, Travelers has no liability where Echols has none.[19] And as shown above, Echols was not liable. Thus, the trial court correctly granted summary judgment to Travelers.[20]

*Judgment affirmed. Andrews, J., concurs. McFadden, J., concurs specially.*

---

[14] Id.

[15] OCGA § 15-13-13 (a) (formerly Code of 1933, § 24-211); *Henson & Henson, P.C. v. Myszka*, 160 Ga. App. 135, 136 (1) (286 SE2d 456) (1981).

[16] See *Scott v. Vesta Holdings I*, 275 Ga. App. 196, 201 (2) (620 SE2d 447) (2005) (a tax commissioner is subject to a money rule as an ex-officio sheriff under OCGA §§ 48-5-137; 15-13-2 (4)).

[17] OCGA § 15-13-3 (a).

[18] *Jones*, supra.

[19] See OCGA § 10-7-2, which pertinently provides: "The obligation of the surety is accessory to that of his principal; and, if the latter from any cause becomes extinct, the former shall cease of course, even though it is in judgment."; *Norris v. Pollard*, 75 Ga. 358, 361 (1885) (the surety is liable for no greater amount than is found to be due from the principal; his liability cannot be extended beyond that of his principal).

[20] *Jones*, supra; *Norris*, supra; OCGA § 10-7-2.

MCFADDEN, Judge, concurring specially.

I cannot fully join Division 1 of the majority opinion, because I believe that the appeal should be resolved under the plain language of OCGA § 15-13-3. I concur in Division 2 and in the judgment.

Brina Bay brought its money rule action against Echols pursuant to OCGA § 15-13-3. Pertinent to this appeal, that Code section applies when a sheriff "fails, upon application, to pay to the proper person or his attorney any money *he may have in his hands* which he may have collected by virtue of his office." (Emphasis supplied.) OCGA § 15-13-3 (a). It is undisputed that Echols, as ex-officio sheriff, had no money in his hands collected by virtue of his office in connection with the tax sale either when Brina Bay applied for the excess tax sale funds or when Brina Bay obtained its interest in the property.

Accordingly, Brina Bay has no claim pursuant to OCGA § 15-13-3 under the plain language of that Code section. Because Brina Bay articulates no other basis for its claim, I believe that this is dispositive of the appeal. I therefore see no need to address, in this case, the propriety of Echols's earlier decision to distribute the excess tax sale funds or the merits of Brina Bay's assertion that Echols's actions amounted to improperly paying a claimant who was first in time rather than first in priority.

DECIDED FEBRUARY 21, 2012.

*Weissman, Nowack, Curry & Wilco, Bradley A. Hutchins, Busch, Slipakoff & Schuh, Christopher M. Porterfield*, for appellant.

*Stewart, Melvin & Frost, William H. Blalock, Jr., Bovis, Kyle & Burch, Gregory R. Veal, William R. Bryant, Freeman, Mathis & Gary, Dana K. Maine, Michelle Y. Terry*, for appellee.