**WHOLE COURT**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 10, 2015**

# In the Court of Appeals of Georgia

A15A1485. DLT LIST, LLC et al. v. M7VEN SUPPORTIVE   DO-072
      HOUSING & DEVELOPMENT GROUP.

DOYLE, Chief Judge.

The instant case arises from an equitable interpleader action filed following the tax sale of certain real property in Carroll County, Georgia, by Vickie Bearden, in her capacity as Tax Commissioner of the County, in order to disburse excess tax-sale funds totaling $105,188.91. The trial court awarded the excess funds to M7VEN SUPPORTIVE HOUSING & DEVELOPMENT GROUP ("M7"), finding that M7 was the only interest holder able to make a claim on the funds at the time of the sale. Design Acquisition, LLC ("Design"), and DLT List, LLC, now appeal,[1] arguing that

---

[1] Although the Appellants' brief purports to include Marshall Jones as an appellant, the record does not show that Jones has appeared before the trial court or this Court or that the attorney representing Design and DLT List made an entry of appearance on behalf of Jones.

the trial court erred by (1) failing to provide them with notice and a hearing; (2) awarding M7 the excess funds; and (3) determining that Bearden was not authorized to file an interpleader action. For the reasons that follow, we affirm.

The record shows that on June 3, 2014, based on M7's failure to pay certain taxes on two properties, Bearden conducted tax sales of the properties, which DLT List purchased for $55,000 per property. On June 6, 2014, Bearden notified M7, Farooq Ijaz Cheema, Ameris Bank, DLT List, and Marshall Jones of excess funds. On July 14, 2014, M7 filed with Bearden a certificate of authorization to receive the excess funds, including August 18, 2014 certificates of title listing DLT List as owner of the properties subject to M7's right of redemption. None of the other parties made a claim to the funds. On July 28, 2015, DLT List filed its tax deeds for each property in the property records of Carroll County.

Based on its ownership of a Fulton County fieri facias as evidence of its status as a lien holder against M7,[2] Design redeemed from DLT List the Carroll County

[2] M7 had also failed to pay taxes in 2013 on Fulton County property, which resulted in the issuance of a writ of fieri facias against both M7 and its Fulton County property. The Fulton County fieri facias, which does not appear to have been recorded in the Carroll County general execution docket, was purchased for $1,395.55 by InVesta Services of Georgia on January 15, 2014. On September 10, 2014, Design, purchased the Fulton County fieri facias from InVesta.

properties for the statutory redemption amounts of $66,000 each on September 22, 2014; DLT List then issued Quit Claims of Redemption to M7 for both properties as required pursuant to OCGA § 48-4-44. On October 27, 2014, Design filed a declaratory judgment action,[3] claiming entitlement to the excess funds based on its redemption of the Carroll County properties.

On November 14, 2014, Bearden filed the equitable interpleader petition at issue here, listing M7 as the owner of the properties at the time of the tax sales and as a respondent to the petition. Bearden also listed Cheema, Ameris Bank, DLT List, and Jones as respondents with potential interests in the petition.[4] DLT List, M7, and Ameris Bank acknowledged service of the action.

In December 2014, M7 responded to the action, contending that Bearden should have released the excess funds to it because (1) Cheema's lien had been extinguished by a previous foreclosure of the properties, barring him from any claim to the excess funds; (2) Ameris Bank had conveyed any interests in the properties to M7 prior to the tax sales, barring it from any claim to the excess funds; (3) DLT List

---

[3] Design named M7 and Bearden as respondents in its declaratory judgment action; Bearden was served on November 6, 2014.

[4] Cheema and Ameris at one time held liens on the property, while DLT List and Jones were listed as purchasers of the properties at the June 3 tax sales.

was the tax sale purchaser and was, therefore, not entitled to the excess funds; and (4) Jones was not listed anywhere in the chains of titles of the properties and had no claim to the funds.

On January 21, 2015, DLT List filed a Motion to Dismiss or Consolidate the equitable interpleader action with Design's declaratory judgment action.[5] That same day, Design filed a Consent Motion to Intervene in the interpleader action.

After a telephonic hearing on January 27, 2015 (a transcript for which does not appear in the record), the trial court allowed the parties to brief the issue of rights to the excess funds.[6] On February 6, 2015, Design filed documents in response to this telephonic hearing supporting the position it argued to the superior court.[7] Thereafter, the trial court issued an order finding that because M7 was the only claimant to respond or have an interest in or title to the properties at the time Bearden issued the

---

[5] DLT List claimed it had not been served with the equitable interpleader action; however, an acknowledgment of service by DLT List was filed in the court on December 1, 2014.

[6] Design admits that its motion to intervene was granted during the telephonic conference. A hearing had been held on January 15, 2015; however, no ruling was made at that hearing.

[7] Although M7 contends that it filed a letter brief, such document does not appear in the record before this Court.

4

excess funds notification in June 2014, Bearden should have issued the funds to M7 within a reasonable time after submission of its claim. This appeal followed.

1. Relying on this Court's previous decisions in *Wester v. United Capital Finance of Atlanta, LLC*,[8] and *United Capital Finance of Atlanta v. American Investment Assoc.*,[9] Design contends that the trial court erred by awarding M7 the excess funds because Design's status as redeemer of the property gave it first priority to the excess funds. Because we determine that *Wester* and *United Capital* were wrongly decided as to this issue, we hereby disapprove of those cases and affirm the trial court's award of the excess funds to M7.

Pursuant to OCGA § 48-4-1, if a property owner fails to pay county property taxes, the county may issue a writ of fieri facias and conduct a sale of the property to satisfy the unpaid taxes. The "tax [sale] deed vests the purchaser with a defeasible (and, incidentally, taxable) fee interest in the property," which continues for a one-year period during which time "the delinquent taxpayer or any other party holding an interest in or lien on the property may redeem the property by paying to the tax sale

_____

[8] 282 Ga. App. 392 (638 SE2d 779) (2006).

[9] 302 Ga. App. 400 (691 SE2d 272) (2010).

purchaser the purchase price plus any taxes paid and interest."[10] Otherwise, if no one redeems the property, all the liens and ownership interests in the property existing prior to the tax sale are swept away at the close of the year, leaving the tax-sale purchaser with clear title to the property[11]; essentially, the tax-sale purchaser becomes the fee simple owner of the property while the prior lien-holders and owner have no remaining interest in the property.[12] On the other hand, if the prior owner or a lien-holder (or other creditor of the owner) does redeem the property from the tax-sale purchaser, then the tax-sale purchaser quit claims the property back to the original owner, and any lien-holders at the time of the sale that have not been fully paid (through excess funds or another method) retain their pre-sale liens on the property.[13] Under this scenario, the redeeming creditor receives a priority lien for the redemption price of the property, which puts this lien ahead of any of the remaining prior liens.[14]

_____

[10] *Nat. Tax Funding, LP v. Harpagon Co.*, 277 Ga. 41, 42-43 (1) (586 SE2d 235) (2003).

[11] See id. at 43 (2). The tax-sale purchaser must follow applicable procedures to foreclose the redemption period. See OCGA § 48-4-45.

[12] See id. at 44-45 (3).

[13] See id.

[14] See id. at 42-43 (1).

6

At times, a tax sale will generate additional funds than necessary to satisfy the tax lien for which the land was levied and sold. In those instances, OCGA § 48-4-5 (a) explains the process for payment of excess tax sale proceeds:

> [i]f there are any excess funds after paying taxes, costs, and all expenses of a sale made by the tax commissioner, tax collector, or sheriff, or other officer holding excess funds, the officer selling the property shall give written notice of such excess funds *to the record owner of the property* ***at the time of the tax sale*** and *to the record owner of each security deed affecting the property and to all other parties having any recorded equity interest or claim in such property* ***at the time of the tax sale***. Such notice shall be sent by first-class mail within 30 days after the tax sale. The notice shall contain a description of the land sold, the date sold, the name and address of the tax sale purchaser, the total sale price, and the amount of excess funds collected and held by the tax commissioner, tax collector, sheriff, or other officer. *The notice shall state that the excess funds are available for distribution to the owner or owners as their interests appear in the order of priority in which their interests exist.*[15]

---

[15] (Emphasis supplied.) In 2002, OCGA § 48-4-5 was amended from "[i]f there is any excess after paying taxes, costs, and all expenses of a sale, it shall be immediately paid to the person authorized to receive the excess," to state that "[i]f there is any excess after paying taxes, costs, and all expenses of a sale, the tax commissioner or tax collector may file an interpleader action in superior court for the payment of the amount of such excess. Such excess shall be distributed by the superior court to intended parties, including the owner as their interest appears and in the order of priority in which their interest exists." The current Code section was

This statute looks to the owner and lien holders prior to the tax sale, and tax-sale purchasers have no claim to the excess funds based on their post-sale ownership.[16] Previous iterations of this statute were interpreted to mean that the excess funds should be distributed to the owner of the property if no lien-holder existed at the time of the tax sale, or to any lien-holders (in addition to the owner) if the lien-holders had a valid interest arising prior to the tax sale.[17]

---

implemented in 2006.

[16] See *Barrett v. Marathon Investment Corp.*, 268 Ga. App. 196, 198-199 (1) (601 SE2d 516) (2004) (purchase of property at tax sale did not entitle post-sale owner to any interest in the excess tax funds generated from that sale).

[17] See, e.g., *Simmons v. May*, 53 Ga. App. 454, 456 (186 SE 441) (1936) ("[if] one who creates a lien upon his property as security for debt thereafter permits the same to sell for delinquent taxes accruing after the creation of the lien, by which sale the security is lost to the lienee, the lienee is entitled to any excess remaining in the hands of the tax authorities, after payment of the taxes, costs and expenses of sale; and as against the lienee[,] the lienor has no right to this excess, even were the security returned for taxation and assessed in the name of the lienor by reason of a statute directing the excess from any tax sale to be 'paid to the person authorized to receive the same.'") (citations omitted) (pre-2002 statute). See also *Barrett*, 268 Ga. App. at 198-199 (1) & (2) (holding that an owner of property at the time of a tax sale may sell or deed his right to the excess sale proceeds after the tax sale is completed) (pre-2002 statute); *Ga. Lien Svcs. v. Barrett*, 272 Ga. App. 656 (613 SE2d 180) (2005) (same, but holding that the owner failed to validly transfer rights to excess funds).

8

Thus, after a tax sale occurs, the officer holding the excess sale funds provides notice within 30 days of the sale to the recorded owners and interest holders, and then distributes those excess funds to the persons holding interests in the property in existence from the time of the tax sale, such as the owner or owners or any lien holders (or their proper post-sale assignees).

In this case, at the time of the tax sale, M7 was the owner and there were no recorded liens on the property. And at the time of M7's claim against the excess, there were no claimants other than M7 and Design, which failed to present a claim for its Fulton County tax lien and only presented a claim for the amount of the redemption price of the properties. Thus, the trial court properly determined that Bearden should have dispersed the excess funds to M7. Design, as the redeeming creditor, claims that its first priority lien entitles it to the excess tax funds for the redemption price of the properties (not the amount of its original lien or interest) pursuant to *Wester* and *United Capital.*

*Wester*[18] and its progeny, however, without explanation incorrectly expanded the holding of *Nat. Tax Funding* to mean that the redeeming creditor could both redeem the property and receive excess funds from the tax sale to pay for the priority

---

[18] 282 Ga. App. at 392.

lien created by the redemption.[19] Instead, *Nat. Tax Funding* held that "following a tax

sale, the holder of a . . . lien has two options — it may either file a claim to collect

against any proceeds from the sale,[20] *or* it may assert its rights following the tax sale

via a statutory claim for redemption, in which case it obtains a first priority lien on

the property, which it may then enforce by levy and sale."[21] Accordingly, to the extent

that *Wester* and its progeny hold that the redeeming creditor has a first priority claim

on the excess tax funds for the amount paid to redeem the property, they are hereby

overruled. As the assignee of InVesta Services's pre-tax-sale lien, Design was entitled

to make a claim against the excess tax funds for the amount of its Fulton County tax

lien (at least $1,395.55)[22] with the remainder of the excess funds going to M7 (the

---

[19] See id. at 393-394. See also *United Capital Finance of Atlanta*, 302 Ga. App. at 402-403 (1). To the extent that *Brina Bay Holdings, LLC v. Echols*, 314 Ga. App. 242 (723 SE2d 533) (2012), also follows this holding, we note that this case is physical precedent only.

[20] See, e.g., *Scott v. Vesta Holdings I, LLC*, 275 Ga. App. 196, 201 (1) (620 SE2d 447) (2005).

[21] (Emphasis supplied.) *Nat. Tax Funding, LP*, 277 Ga. at 44 (3).

[22] See *Barrett*, 268 Ga. App. at 198-199 (1) & (2). See also *Leathers v. McLain*, 255 Ga. 378 (338 SE2d 666) (1986) ("The assignee of a security deed has legal title to the property, subject to the right of the original grantor to have the property reconveyed to him upon payment of the debt."); OCGA § 48-2-56 (a) ("liens for all taxes due the state or any county or municipality in the state shall arise as of the time

only other claimant for the funds).[23] It is the redemption price, however, that would not be recoverable from the excess and would be the first priority lien (in this case the only lien) against the property going forward.

2. To the extent that Design contends that it did not receive due process, that claim is without merit. The record shows that the trial court held a telephonic conference in which Design's attorney participated, and the court allowed the parties to brief the issue after that conference. Design fails to show that it was not afforded an opportunity to present all its arguments to the trial court.

3. Lastly, Design argues that the trial court erred by finding that Bearden did not have discretion to file the interpleader action. No order, however, indicates that the trial court made any such holding.[24] What the trial court found instead was that

_____

the taxes become due and unpaid and all tax liens shall cover all property in which the taxpayer has any interest from the date the lien arises until such taxes are paid."). Thus, even though the lien was not recorded in Carroll County, the lien was of record.

[23] See *Barrett*, 268 Ga. App. at 198-199 (1) & (2). We note that Design did not make such a claim for this amount from Bearden, it did not request excess funds in this amount from the trial court, and it did not raise this claim in its brief before this Court.«**R at 255-259; 244-246**» Accordingly, any such claim to entitlement to this amount from the excess funds is not properly before this Court. See *McLeod v. Robbins Assn.*, 260 Ga. App. 347, 348 (1) (579 SE2d 748) (2003).

[24] We note that OCGA § 48-4-5 (b) states that if necessary "[t]he . . . [tax] officer may file an interpleader action in superior court for the payment of the amount

11

at the point in time in which Bearden filed the action, it was not necessary because she should have paid the M7 claim (or filed an equitable interpleader) some four months earlier. Accordingly, this argument is without merit.

*Judgment affirmed. Andrews, P. J., Barnes, P. J., Ellington, P. J., Phipps, P. J., Miller, Dillard, McFadden, Boggs, Ray, Branch, and McMillian, JJ., concur.*

---

of such excess funds. Such excess funds shall be distributed by the superior court to the intended parties, including the owner, as their interests appear and in the order of priority in which their interests exist."