**WHOLE COURT**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 1, 2016**

# In the Court of Appeals of Georgia

A16A1029. BRIDGES et al. v. COLLINS-HOOTEN et al.

McMILLIAN, Judge.

Eric Bridges appeals the trial court's order disbursing excess tax sale funds in this interpleader action, asserting in related enumerations of error that the trial court erred (1) in ordering the excess funds to be disbursed to the Georgia Department of Revenue and (2) in awarding attorney fees beyond those allowed in an interpleader action. For the reasons set forth below, we affirm in part and reverse in part.

On December 4, 2001, Dougherty County conducted a non-judicial tax sale of the property at 3111 Winterwood Avenue (the "Property") for unpaid taxes. Heartwood 11, Inc. ("Heartwood") purchased the Property at the tax sale, which, after payment of all past due taxes and costs, generated $45,274.54 in excess funds (the "Funds"). On November 26, 2002, Fairbanks Capital Corporation ("FCC") redeemed

the Property from Heartwood, and a quitclaim deed was recorded in Dougherty County identifying FCC as the redeeming party.

Over eleven years later, in January 2014, Denver Collins-Hooten, acting as the tax director of Dougherty County (the "Tax Director"), filed an interpleader action in the Superior Court of Dougherty County and deposited the Funds into the court's registry. The Tax Director named Otis Bridges, Eric Bridges,[1] FCC, and the Georgia Department of Revenue as respondents with a potential interest in the Funds. The trial court granted the Tax Director's motion to serve all respondents by publication, and Eric responded in July 2014, asserting his claim to the Funds. The following month, Eric filed a "Motion to Disburse Proceeds or in the Alternative for Grant of Summary Judgment," noting that he was entitled to the Funds and that no other persons or entities had made any claim to the Funds.

On September 2, 2014, the Tax Director filed a separate motion to disburse, acknowledging that Eric was the only respondent to respond to the interpleader action. In her motion, the Tax Director also included a claim for attorney fees relative

---

[1] Otis Bridges, who subsequently passed away in May 2005, was the record owner of the Property at the time of the tax sale in December 2001. Eric Bridges is the administrator of Otis Bridges' estate and his sole heir. For the sake of clarity, we will refer to these individuals as Otis and Eric.

to the filing of the interpleader action in the amount of $3,735 and requested a hearing to determine which of the respondents should receive the Funds. On September 10, 2014, the trial court entered an order granting Eric's motion to disburse the Funds, awarding the full amount to Eric, subject only to the Tax Director's filing of a bill of costs.

The Tax Director thereafter filed an emergency motion to set aside the order and halt the disbursement of the Funds on the grounds that the trial court did not allow it a full 30 days to respond to Eric's motion to disburse, which she characterized as a motion for summary judgment. The same day, the Tax Director moved for an extension of time to respond to Eric's motion, as well as for leave to substitute party defendant FCC with Select Portfolio Servicing, Inc. ("SPS").[2] The trial court then entered separate orders halting any disbursement of the Funds, setting aside its previous order awarding the Funds to Eric, and granting the Tax Director's motion to substitute.

---

[2] It appears from the record that at some point the Tax Director learned that FCC had been acquired by SPS after FCC had already redeemed the Property. Although SPS was served on October 7, 2014, it is undisputed that SPS never responded to the interpleader petition, and SPS is not a party to this appeal.

3

Following a hearing, the trial court entered an order denying Eric's motion to disburse the Funds and a subsequent order finding that SPS is the entity with a priority interest in the Funds. However, because SPS did not make a claim for the Funds, the trial court ordered the Funds to be disbursed to the Georgia Department of Revenue[3] after payment of attorney fees totaling $8,183.57 to the Tax Director. This appeal followed.

1. In his first two enumerations of error, Eric asserts that the trial court erred in finding that SPS has a priority interest in the Funds. Whether SPS has a priority interest in the Funds under the relevant statutes is a question of law, which we review de novo. See *City of Atlanta v. Hotels.com*, 289 Ga. 323, 325 (1) (710 SE2d 766) (2011).

Under Georgia law, if a property owner fails to pay county property taxes, the county may conduct a sale of the property to satisfy the unpaid taxes. See OCGA § 48-4-1. Following a tax sale, the tax deed vests the purchaser with a defeasible fee interest in the property that continues for a one-year period during which time other interested parties retain a statutory right of redemption. *Land USA, LLC v. Ga. Power*

---

[3] Pursuant to OCGA § 48-4-5 (c), after five years have elapsed from the tax sale date, the party holding the excess funds is to pay over to the Georgia Department of Revenue any unclaimed excess funds.

4

*Co.*, 297 Ga. 237, 239 (1) (773 SE2d 236) (2015) (delinquent taxpayer or party holding interest in or lien on property may redeem property by paying to tax sale purchaser the purchase price plus taxes paid and interest). "If the property is redeemed, the tax sale is essentially rescinded and a quitclaim deed is executed by the tax sale purchaser back to the owner of the property at the time of levy and sale." *Nat. Tax Funding, L.P. v. Harpagon Co., LLC*, 277 Ga. 41, 42 (1) (586 SE2d 235) (2003).

And when "a creditor of the original taxpayer redeems the property, the amount paid by the redeeming creditor becomes a first lien on the property. The redeeming creditor then has first priority to repayment – a 'super-lien' for the redemption price – and may proceed to foreclose against the property based upon that lien." *Nat. Tax Funding*, 277 Ga. at 42-43 (1). Other lienholders at the time of the sale that have not been fully paid – through excess funds or otherwise – retain their presale liens on the property. See *DLT List, LLC v. M7VEN Supportive Housing & Dev. Group*, 335 Ga. App. 318, 321 (1) (779 SE2d 436) (2015).

When a tax sale generates additional funds more than those necessary to satisfy the tax lien, OCGA § 48-4-5 (a) governs the payment of excess tax sale proceeds. That statute provides:

5

If there are any excess funds after paying taxes, costs, and all expenses of a sale made by the tax commissioner . . . the officer selling the property shall give written notice of such excess funds to the record owner of the property at the time of the tax sale and to the record owner of each security deed affecting the property and to all the other parties having any recorded equity interest or claim in such property at the time of the tax sale. Such notice shall be sent by first-class mail within 30 days after the tax sale. The notice shall contain a description of the land sold, the date sold, the name and address of the tax sale purchaser, the total sale price, and the amount of excess funds collected and held by the tax commissioner, tax collector, sheriff, or other officer. The notice shall state that the excess funds are available for distribution to the owner or owners as their interests appear in the order of priority in which their interests exist.[4]

The Tax Director argued below, and the trial court agreed, that SPS has a priority interest in the Funds, relying on this Court's decision in *Wester v. United Capital Financial of Atlanta, LLC*, 282 Ga. App. 392 (638 SE2d 779) (2006), which held that the interest of the redeeming creditor takes priority over any claims on the property, including the property owner's interest. However, shortly after the trial court entered its order, *Wester* was expressly overruled by *DLT List.* 335 Ga. App. at

_____

[4] The record does not disclose whether the Tax Director or her predecessor had provided the required notice to interested parties within 30 days of the tax sale.

320.[5] In *DLT List*, this Court explained that *Wester* had incorrectly expanded the holding of *Nat. Tax Funding* to mean that the redeeming creditor could both redeem the property and receive excess funds from the tax sale to pay for the priority lien created by the redemption:

> Instead, *Nat. Tax Funding* held that following a tax sale, the holder of a lien has two options – it may either file a claim to collect against proceeds from the sale, *or* it may assert its rights following the tax sale via a statutory claim for redemption, in which case it obtains a first priority lien on the property, which it may then enforce by levy and sale.

(Citation and punctuation omitted.) 335 Ga. App. at 323 (1). Thus, the trial court erred in relying on *Wester* to find that SPS, as the redeeming creditor, had a priority interest in the Funds and in denying Eric's motion to disburse on that basis.

The question then is whether the trial court properly granted the Tax Director's motion to disburse the Funds on grounds now asserted by the Tax Director – that SPS had a separate recorded security interest on the property at the time of the 2001 tax

---

[5] We note that our Supreme Court recently granted a writ of certiorari in *DLT List*. See Case No. S16C0646. However, under our Constitution's two-term rule, this Court is required to "dispose of every case at the term for which it is entered on the court's docket for hearing or at the next term." Ga. Const. Art. VI, § IX, ¶ II. Thus, "we are not at liberty to delay the disposition of appeals in anticipation of pending decisions from [our own] Supreme Court." *In the Interest of J. F.*, 338 Ga. App. 15, 18 (789 SE2d 274) (2016).

7

sale. Based on our review of the record, SPS's purported security interest is only referenced in the quitclaim deed executed upon the redemption sale. The security deed is not in the record nor is there any evidence of the actual amount of the security interest. To the contrary, in support of his motion to disburse the Funds, Eric submitted the affidavit of a title examiner who averred that he examined the real property records for the Property for the period 1981 to 2014 and found that Otis had, over the years, secured payment of borrowed money with several individuals and banks, including NationsCredit,[6] but that each of the respective security deeds had been satisfied of record and that there were no outstanding security deeds under or in his name secured by the Property. Although the Tax Director now argues on appeal that there was insufficient evidence presented to the trial court to support a finding that SPS's security deed was cancelled, at the hearing on the parties' cross motions to disburse, the Tax Director, through counsel, conceded that any outstanding security deeds had been paid even before the Property's several subsequent sales. This argument has therefore been waived. See *Reed v. State*, 294 Ga. 877, 879 (2), n.2 (757 SE2d 84) (2014); *Hollberg v. Spalding County*, 281 Ga. App. 768, 774-75 (2)

---

[6] The title examiner further explained that NationsCredit appointed FCC as its duly authorized power of attorney for all loans whose servicing was transferred from NationsCredit to FCC in 2001 and recorded the power of attorney on July 8, 2002.

8

(b) (637 SE2d 163) (2006) ("Admissions of fact, made by a party's counsel during a hearing or trial are regarded as admissions in judicio and are binding on the party.") (citation and punctuation omitted).

Although SPS apparently had an interest in the Property at the time of the tax sale that gave it a statutory right of redemption, it is undisputed that SPS's security deed has now been fully satisfied, and it no longer retains any priority lien on the Property. See *DLT List,* 335 Ga. App. at 321 (1). Accordingly, the trial court erred in finding that SPS is entitled to receipt of the Funds instead of Eric, as the administrator of the original owner's estate.[7] See OCGA § 48-4-5 (b) ("Such excess funds shall be distributed by the superior court to the interested parties, including the owner, as their interests appear and in the order of priority in which their interests exist.").

2. Eric next asserts that the Tax Director was not a disinterested party to this interpleader action because she made a direct claim to at least a portion of the Funds and thus has no standing to recover attorney fees. OCGA § 48-4-5 (b) provides in pertinent part:

---

[7] Based on our holding in this Division, we need not address Eric's fifth enumeration of error, in which he asserts that he is entitled to the Funds because SPS defaulted after failing to file an answer or otherwise present its claim following the Tax Director's personal service of the interpleader petition on SPS.

9

The tax commissioner, tax collector, sheriff, or other officer may file, when deemed necessary, an interpleader action in superior court for the payment of the amount of such excess funds. . . . The cost of litigation of such an interpleader action, including reasonable attorney's fees, shall be paid from the excess funds upon order of the court.

The record here confirms that the Tax Director not only sought the cost of bringing the interpleader action, but also directly claimed entitlement to a portion of the Funds for "ad valorem taxes that may be either presently due or past due on the subject property." While this assertion was improper,[8] the trial court did not award any portion of the Funds to the Tax Director for this purpose, nor do we find that such an improper allegation invalidates the entire interpleader action. The Tax Director is clearly permitted under Georgia law to otherwise bring an interpleader action regarding excess funds following a tax sale. See OCGA § 48-4-5 (b). Accordingly, this enumeration of error provides no basis for reversal.

3. In the alternative, in his final enumeration of error, Eric maintains that the trial court's award of attorney fees to the Tax Director must be reduced. In her initial

---

[8] See *Iglesia Del Dios Vivo Columna Y Apoyo De La Verdad La Luz Del Mundo, Inc. v. Downing*, 321 Ga. App. 778, 781 (742 SE2d 742) (2013) (tax commissioner not authorized to use excess funds to satisfy any outstanding ad valorem taxes accrued on the subject property after the tax sale).

motion to disburse the Funds, the Tax Director asserted a claim for $3,735 in attorney fees. However, after the trial court initially awarded the Funds to Eric – subject to the payment of the attorney fees requested by the Tax Director – the Tax Director continued to actively litigate the matter, including filing an emergency motion to set aside, requesting a hearing, moving to substitute one of the potentially interested parties, and filing an amended interpleader petition before attending and arguing at the hearing on the motion to disburse. At the time the trial court ultimately entered its final order disbursing the Funds, the Tax Director requested and received an order granting attorney fees in the amount of $8,183.57.

Because OCGA § 48-4-5 (b) provides in mandatory language that the trial court "shall" award attorney fees, the award of attorney fees will be affirmed on appeal if there is any evidence to support it. See *Grapefields, Inc. v. Kosby*, 309 Ga. App. 588, 589 (710 SE2d 816) (2011). As explained in Division 2, under Georgia law, a tax commissioner is authorized to file an interpleader action for the payment of the amount of any excess funds available following a tax sale. OCGA § 48-4-5 (b). And the statute authorizing the filing of an interpleader action also provides that "[t]he cost of litigation of such an interpleader action, including reasonable attorney's fees, shall be paid from the excess funds upon order of the court." Id. This statute

11

does not specifically limit the actions to be taken by a tax commissioner in litigating the action, and the trial court here found the attorney fees submitted by the Tax Director to be reasonable. Based on the record before us, we cannot say that there was no evidence to support the trial court's award of attorney fees to the Tax Director. See *LN West Paces Ferry Assocs., LLC v. McDonald*, 306 Ga. App. 641, 646 (1) (although attorney fees were substantial relative to the damages at issue, moving party presented evidence fees were reasonable in light of amount of time and expense required).

And although Eric argues on appeal that certain time entries showed work unrelated to this action and should not have been included in the trial court's order awarding attorney fees, he failed to object on these specific grounds below. Thus, this argument was waived and presents nothing for review in this appeal. See *Primas v. City of Milledgeville*, 296 Ga. 584, 585 (769 SE2d 326) (2015).

*Judgment affirmed in part and reversed in part. Miller, P. J., Ellington, P. J., Phipps, P. J., Dillard, Branch, Mercier and Peterson, JJ., concur. McFadden, J., concurs as to Divisions 1 and 2 and dissents as to Division 3.*

A16A1029. BRIDGES et al. v. COLLINS-HOOTEN et al.

MCFADDEN, Judge, concurring in part and dissenting in part.

I concur in Divisions 1 and 2. Because the Tax Director is entitled to reasonable attorney fees only for discharging the limited role of a plaintiff in interpleader, I respectfully dissent from Division 3.

A requirement for a plaintiff to file an interpleader action is that she "must not have or claim any interest in the subject matter." *Almand v. Reese*, 209 Ga. 138, 142 (71 SE2d 223) (1952). Once she is no longer disinterested, she loses the right to require the other parties to interplead. See *Gardner v. Haas, Howell & Dodd*, 178 Ga. 685, 687 (173 SE 863) (1934).

And although OCGA § 48-4-5 allows the trial court to award reasonable attorney fees, in interpleader actions, "[t]he general justification for granting counsel fees is that the stakeholder is helping the parties to a prompt result, and because of the

minimal work required to institute a suit in interpleader, the fund will not be seriously depleted." *Mass. Mut. Life Ins. Co. v. Central Penn Nat. Bank*, 372 FSupp. 1027, 1044 (E.D. Pa. 1974) (punctuation omitted). The crucial factor is that the stakeholder must be disinterested in the outcome. *Midland Nat. Life Ins. Co. v. Emerson*, 121 Ga. App. 427, 428 (a) (174 SE2d 211) (1970) (citations omitted). If the stakeholder is not disinterested, "it is necessary for the court to segregate the costs incurred in performing the 'stakeholder' function and award the plaintiff only those fees." *Mass. Mut.*, 372 FSupp. at 1044.

Here, as the majority acknowledges, the Tax Director was not disinterested. First, as noted in Division 2 of the majority opinion, the Tax Director herself made a direct claim to a portion of the funds. Second, as the majority acknowledges, the Tax Director acted as an advocate, arguing that SPS had a priority interest in the funds. The proper course would have been for the Tax Director to seek dismissal as a party to the action, not to assert her own claims or to advocate on behalf of another. *Cheek v. Savannah Valley Production Credit Assn.*, 244 Ga. 768, 770 (5) (262 SE2d 90) (1979). I would hold that the Tax Director was not entitled to attorney fees for asserting her own direct claim or for acting as an advocate for SPS, vacate the award of attorney fees, and remand for recalculation accordingly.