301 Ga. 131
FINAL COPY

S16G0646. DLT LIST, LLC et al. v. M7VEN SUPPORTIVE HOUSING & DEVELOPMENT GROUP.

HUNSTEIN, Justice.

In Wester v. United Capital Financial of Atlanta, LLC, 282 Ga. App. 392 (638 SE2d 779) (2006), and again in United Capital Financial of Atlanta v. American Investment Assoc., 302 Ga. App. 400 (691 SE2d 272) (2010), the Court of Appeals held that a creditor who redeems property following a tax sale has first priority to excess funds resulting from that tax sale. The Court of Appeals overruled those decisions in DLT List, LLC v. M7VEN Supportive Housing & Dev. Group, 335 Ga. App. 318 (779 SE2d 436) (2015), concluding that a redeeming creditor has no such priority; we granted certiorari to consider whether a redeeming creditor after a tax sale has a first priority claim on excess tax sale funds. Though we disagree with the rationale employed by the Court of Appeals below, we nevertheless affirm its decision.

The facts are not in dispute. Appellee M7VEN Supportive Housing & Development Group ("M7") failed to pay taxes on two properties ("the

properties") located in Carroll County, and, consequently, Vickie Bearden, Tax Commissioner of Carroll County, conducted a tax sale. The properties were purchased by Appellant DLT List, LLC ("DLT"), for a total of $110,000, and the tax sale resulted in excess funds of approximately $105,000. On June 6, 2014, Bearden notified M7, DLT, and others of excess funds, and, on July 14, 2014, M7 filed a certificate of authorization seeking to receive the excess funds; though there were no other claims made on the funds, Bearden did not release the funds.

In September 2014, Appellee Design Acquisition, LLC ("Design Acquisition") as a lienholder against M7,[1] redeemed the properties from DLT for a total of $132,000, and DLT issued quitclaim deeds of redemption to M7. In October 2014, Design Acquisition filed a declaratory judgment action claiming entitlement to the excess funds, and, in November 2014, Bearden filed

---

[1] M7 had also failed to pay property taxes on separate property in Fulton County, resulting in the issuance of writs of fieri facias against both M7 and its Fulton County property; those fi. fas., however, were not recorded in Carroll County. See OCGA § 48-2-56 (a) ("liens for all taxes due the state or any county or municipality in the state shall arise as of the time the taxes become due and unpaid and all tax liens shall cover all property in which the taxpayer has any interest from the date the lien arises until such taxes are paid"). In September 2014, Design Acquisition purchased the fi. fas. for $1,395.55.

an equitable interpleader action for the purpose of distributing the excess funds, see OCGA § 48-4-5 (b); the two actions were consolidated. The trial court determined that, because M7 was the only entity to have made a claim for the excess funds or to have had a recorded interest in the properties at the time of the tax sale, Bearden should have timely released the excess funds to M7. DLT and Design Acquisition appealed, arguing that, pursuant to Wester and United Capital, Design Acquisition had first priority to the excess funds as the redeeming creditor. The Court of Appeals, however, overruled United Capital and Wester, concluding that those decisions were an improper expansion of our decision in National Tax Funding v. Harpagon Co., 277 Ga. 41 (586 SE2d 235) (2003); the appellate court applied OCGA § 48-4-5 (a)[2] to the question of excess

---

[2] OCGA § 48-4-5 (a) provides as follows:

If there are any excess funds after paying taxes, costs, and all expenses of a sale made by the tax commissioner, tax collector, or sheriff, or other officer holding excess funds, the officer selling the property shall give written notice of such excess funds to the record owner of the property at the time of the tax sale and to the record owner of each security deed affecting the property and to all other parties having any recorded equity interest or claim in such property at the time of the tax sale. Such notice shall be sent by first-class mail within 30 days after the tax sale. The notice shall contain a description of the land sold, the date sold, the name and address of the tax sale purchaser, the total sale price, and the amount of excess

funds and determined that Design Acquisition had no claim to the excess funds because it was not a lienholder at the time of the tax sale. DLT List, 335 Ga. App. at 322.

1. In National Tax Funding, this Court construed various statutes governing tax sales to address the interest acquired by a party obtaining a tax-sale deed to a property, the status of competing tax liens in existence at the time of the tax sale, and the options available to the holder of a competing tax lien. 277 Ga. at 42-45. Regarding the options available to the holder of a competing tax lien following a tax sale, this Court explained that such a lienholder

> may either file a claim to collect against any proceeds from the sale, or it may assert its rights following the tax sale via a statutory claim for redemption, in which case it obtains a *first priority lien* on the property, which it may then enforce by levy and sale.

(Emphasis supplied.) 277 Ga. at 44. Thereafter, in Wester and United Capital, the Court of Appeals reasoned that the first priority lien, as quoted above, applies to excess funds arising out of the tax sale. However, in its decision

---

> funds collected and held by the tax commissioner, tax collector, sheriff, or other officer. The notice shall state that the excess funds are available for distribution to the owner or owners as their interests appear in the order of priority in which their interests exist.

4

below, the Court of Appeals discounted that reasoning and concluded that National Tax Funding does not permit a redeeming creditor to "both redeem the property *and* receive excess funds from the tax sale to pay for the priority lien created by the redemption." DLT List, 335 Ga. App. at 323 (emphasis supplied). This is a misinterpretation of our decision in National Tax Funding.

As an initial matter, National Tax Funding does not control the specific issue presented in this case nor did it control in Wester or United Capital. Instead, National Tax Funding addresses the status of liens following a tax sale and the options of competing lienholders; the opinion makes only a fleeting reference to excess tax sale funds. See id. at 42. Likewise, the options available to competing lienholders following a tax sale as they were discussed in National Tax Funding — i.e., redeeming the property or claiming a portion of the tax sale proceeds — does not control the question of the distribution of excess tax sale funds, and the contrary conclusion reached by the Court of Appeals below was error.

2.     The question we must now address is whether a redeeming creditor has  a first priority claim on excess tax sale funds. To answer that question, we must delve into the statutory authority governing tax sales and liens.

5

Under our well established rules of statutory construction, we

> presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its "plain and ordinary meaning," we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.

(Citations and punctuation omitted.) Deal v. Coleman, 294 Ga. 170, 172-173 (751 SE2d 337) (2013). We "look to the text of the provision in question and its context within the larger legal framework to discern the intent of the legislature in enacting it." Scott v. State, 299 Ga. 568, 571 (788 SE2d 468) (2016). See also OCGA § 1-3-1 (a), (b). Where the statutory text is "clear and unambiguous," we attribute to the statute its plain meaning, and our search for statutory meaning ends. See Deal, 294 Ga. at 173.

Real property sold under an execution issued for the collection of taxes may be redeemed by the payment of the statutorily prescribed redemption price by a defendant in fi. fa. or any person having any right, title, or interest in or lien upon such property. See OCGA § 48-4-40. Redemption places title to the real property back into the hands of the defendant in fi. fa., and "the amount expended by the [redeemer] shall constitute a first lien on the property and . . .

6

shall be repaid prior to any other claims upon the property." (Emphasis supplied.) OCGA § 48-4-43. Thus, when read together, OCGA §§ 48-4-40 and § 48-4-43 grant a redeeming creditor a first lien on the subject real property in the amount expended to redeem the property that, once recorded, takes priority over any other claims upon the property. Design Acquisition urges us to conclude, as the Court of Appeals did in Wester and United Capital, that the super lien awarded to the redeemer of a tax sale property also gives the redeemer first priority to excess tax sale funds. See OCGA § 48-4-5 (a) (explaining that excess funds are distributed "to the owner or owners as their interests appear in the order of priority in which their interests exist"). We do not find the lien to be so broad.

The super lien created by OCGA § 48-4-43, which is granted specifically to the redeemer of a tax sale property, is in derogation of the common law, see United States ex rel. IRS v. McDermott, 507 U. S. 447 (II) (113 SCt 1526, 123 LE2d 128) (1993) (recognizing the common-law lien principle of "first in time is the first in right" (citation and punctuation omitted), and must be strictly construed, see White v. Aiken, 197 Ga. 29, 33 (28 SE2d 263) (1943) ("Lien laws are to be strictly construed, and one who claims a lien must bring himself

clearly within the law."). See also OCGA § 44-14-320 (a) (establishing tax liens, along with tradesmen and mortgage liens). The plain language of OCGA § 48-4-40 permits the redemption of *real property*, and OCGA § 48-4-43 awards a priority lien to a redeeming creditor that is specific to the *real property* at issue; we are constrained by this language. See OCGA § 48-4-40 (establishing the right to redeem *real* property); OCGA § 48-4-43 (granting redeemer of real property "first lien on *the property*" to be paid "prior to any other claims *upon the property*" (emphasis supplied)). On the other hand, as the parties both recognize, excess funds from a tax sale are *personal* property that is separate and distinct from the real property itself. See Ga. Lien Svcs. v. Barrett, 272 Ga. App. 656 (1) (613 SE2d 180) (2005) (recognizing a distinction between the interest in real property associated with a tax sale and the resulting excess funds); Barrett v. Marathon Inv. Corp., 268 Ga. App. 196 (1) (601 SE2d 516) (2004) (same). Cf. OCGA § 48-1-2 (13) and (19) (recognizing that, as used in Title 48, the definition of "personal property" includes "money"). Thus, the priority lien acquired by a redeeming creditor is exclusive to real property, and the priority lien does not apply to the excess funds.

Amicus curiae contends that the Court of Appeals decision below, and by

extension our decision today, will disrupt the law and prove problematic to those who have relied on Wester and United Capital. Wester, which extended the lien priority in OCGA § 48-4-43 to the distribution of excess tax sale funds, was decided only ten years ago and with very little analysis. Moreover, the Wester decision has proven unworkable because of the year-long redemption window in OCGA § 48-4-40. In Brina Bay Holdings, LLC v. Echols, 314 Ga. App. 242 (723 SE2d 533) (2012), Brina Bay Holdings, LLC, obtained an interest in real property after it had been sold at a tax sale and subsequently redeemed the property; thus, under Wester, Brina Bay had first priority on any excess sale funds. Brina Bay, however, was unable to recover the excess tax sale funds to which it had priority under Wester because, at the time it redeemed the property — which was well within the one-year time frame – the funds had already been distributed to the defendant in fi. fa. in accordance with OCGA § 48-4-5 (a). Brina Bay, 314 Ga. App. at 242.

This case presents another scenario in which the rule in Wester proves unworkable. Here, as the trial court found, M7 was the single claimant to the

excess tax sale funds, and there were no other recorded liens[3] on the property; however, for reasons that are not entirely clear, the tax commissioner did not disburse the funds. It was only months later, after Design Acquisition redeemed the property and filed a declaratory judgment action seeking the funds, that the tax commissioner sought to distribute the funds. The rule as announced in Wester, combined with the year-long redemption period, results in tax officials holding excess funds for at least a year in anticipation that the property *might* be redeemed or, in the event that the funds are paid out in a timely manner, potentially depriving a later-in-time redeeming creditor of a priority lien on excess funds. The bright-line rule announced here avoids such scenarios and is consistent with the plain language of the statutes.

Accordingly, though we disapprove of the rationale of the decision below, we affirm the judgment of the Court of Appeals that a redeeming creditor of a tax sale property does not have a priority lien against excess funds arising from that sale.

Judgment affirmed. Hines, C. J., Melton, P. J., Benham, Nahmias,

---

[3] We do not speak to the status of the then-existing fi. fas. issued by Fulton County. See OCGA § 48-2-56 (a).

Blackwell, Peterson, and Grant, JJ., and Judge Eric W. Norris, concur. Boggs, J., disqualified.

Decided May 15, 2017.

Certiorari to the Court of Appeals of Georgia — 335 Ga. App. 318.

Clark Law Group, John C. Clark, for appellants.

Smith & Liss, Donald L. Cook, Jr.; Mark A. Thompson, for appellee.

Ayoub & Mansour, John A. B. Ayoub; Giacoma, Schleicher Roberts & Daughdrill, Brian E. Daughdrill; Flower Hein Cheatwood & Williams, Robert P. Hein, amici curiae.