S03A0617, S03A0802, S03A0803, S03A0823. NATIONAL TAX FUNDING, L.P. v. HARPAGON COMPANY, LLC et al. (four cases).
(586 SE2d 235)

SEARS, Presiding Justice.

Appellant National Tax Funding, L.P. ("NTF") appeals the trial court's ruling that as transferee of the purchaser of real property at a sale for delinquent ad valorem taxes, appellee the Harpagon Company, LLC ("Harpagon") holds fee simple title to the property unencumbered by any competing tax liens, including those of NTF. We conclude that NTF's interest in the subject property was terminated when it failed to exercise its right of redemption following the tax sale, despite having received notice under statute that its redemption rights would soon end. Therefore, applying the "right for any reason rule," we affirm.

Along with other entities, both NTF and third-party Heartwood 11, Inc., held tax liens against certain property located in Fulton County.[1] Heartwood 11 obtained writs of fieri facias from the Tax Commissioner, levied upon its liens and acquired tax deeds to the property. Heartwood 11 then quitclaimed the property to Harpagon. Thereafter, Harpagon served notice on the delinquent taxpayer and all others claiming an interest in the property, including NTF, asserting the statutory bar to the right of redemption. Harpagon then filed a petition to quiet title, and sought a declaration that it holds title to the property free and clear of NTF's tax liens. NTF

---

[1] Both Heartwood and NTF acquired their tax liens from the Fulton County Tax Commissioner.

responded and argued that its tax liens had never been paid and therefore remained valid.

A hearing was held before the special master, who concluded that a tax sale divests all liens except the one levied upon from the property sold, so as to give the tax sale purchaser marketable title. Accordingly, the special master found that by virtue of its transferor's tax sale purchase of the subject property, Harpagon held title to the property free and clear of NTF's tax liens. The trial court adopted the special master's findings and conclusions, entered judgment in Harpagon's favor, and these appeals follow.

1. All owners of non-exempt real and tangible personal property are subject to taxation on the property's fair market value as of January first of each year.[2] In order to secure payment of these taxes when they fall delinquent, the law creates a lien which extends not only to the property giving rise to the tax obligation, but also to all other property owned by the taxpayer.[3] Generally, a lien for delinquent ad valorem taxes arises at the time the taxes become due and unpaid, and "cover[s] all property in which the taxpayer has any interest from the date the lien arises until such taxes are paid."[4] When taxes are not paid, the Tax Commissioner is authorized to issue a writ of fieri facias (or tax execution), which is a directive to the appropriate officer (often the sheriff) to levy upon the property, sell it and collect the unpaid taxes.[5] Following a tax sale, after the payment of taxes, costs, and other expenses, any excess proceeds may be claimed by the parties entitled to receive them, including those who hold other liens against the property.[6]

After the tax sale, the delinquent taxpayer or any other party holding an interest in or lien on the property may redeem the property by paying to the tax sale purchaser the purchase price plus any taxes paid and interest.[7] If the property is redeemed, the tax sale is essentially rescinded and a quitclaim deed is executed by the tax sale purchaser back to the owner of the property at the time of levy and sale.[8] If a creditor of the original taxpayer redeems the property, the amount paid by the redeeming creditor becomes a first lien on the property. The redeeming creditor then has first priority to repayment — a "super-lien" for the redemption price — and may proceed to fore-

---

[2] OCGA §§ 48-5-1; 48-5-3; 48-5-9; 48-5-10.

[3] OCGA § 48-2-56 (a).

[4] Id.

[5] OCGA §§ 48-3-3; 48-5-127 (a) (6); 48-5-161.

[6] OCGA § 48-4-5. If the tax sale proceeds are insufficient to fully pay an outstanding tax lien, the tax lienholder may levy upon and collect from the taxpayer's other property. See OCGA § 48-2-56 (a).

[7] OCGA § 48-4-42.

[8] OCGA § 48-4-44.

close against the property based upon that lien.[9] This right of redemption, however, may be terminated by the tax sale purchaser anytime after one year following the tax sale. After that year has run, the tax sale purchaser may "terminate, foreclose, divest, and forever bar" all rights to redeem the property by giving notice under OCGA § 48-4-40 et seq. ("the barment statutes") to all parties with redemption rights.[10] The barment statutes apply to "all persons having . . . any right, title, or interest in, or lien upon" the subject property.[11] However, until such time as the barment statutes are invoked once the one year redemption period has run, the tax sale purchaser's interest in the property is not exclusive, as the taxpayer and other lienholders retain their rights of redemption. A tax deed vests the purchaser with a defeasible (and, incidentally, taxable) fee interest in the property, but it does not entitle a purchaser to exclusive possession until the right of redemption is terminated.[12]

Accordingly, the trial court erred by concluding that the tax sale of the property held to satisfy Harpagon's predecessor's tax lien divested NTF's tax lien interest from the property sold. By obtaining a tax sale deed to the property, Harpagon may have obtained a defeasible fee interest in the property, but its title was subject to encumbrance for at least one year after purchase due to the other interested parties' statutory rights of redemption.

2. The nature of Harpagon's title changed, however, once it gave notice under the barment statutes to all interested parties that their rights of redemption would expire and be barred as of one year after the tax sale purchase of the property, and all interested parties elected not to redeem the property within the redemption period. "The effect of expiration [of the redemption period] and bar of the right of redemption is to vest the purchaser with an absolute and unconditional title to the land, provided such title was owned by the [original owner], and the tax sale was valid."[13] Hence, after expiration of the redemption period, Harpagon held indefeasible fee simple title to the property.

3. The question remains, however, whether Harpagon's title to the property remained encumbered by NTF's tax lien after NTF's failure to redeem the property during the redemption period even though it received notice under the barment statutes. NTF argues

---

[9] OCGA § 48-4-43.

[10] OCGA § 48-4-45.

[11] OCGA § 48-4-45 (a) (1) (C).

[12] Hinkel, Pindar's Georgia Real Estate Law, § 4-49 (5th ed.); *McDonald v. Wimpy*, 206 Ga. 270, 273 (56 SE2d 524) (1949). See OCGA § 48-2-57 (a sale of property under legal process shall not divest the state of its tax liens).

[13] Pindar's Georgia Real Estate Law, § 4-51; see *Forrester v. Lowe*, 192 Ga. 469, 476 (15 SE2d 719) (1941).

that its tax lien remains in place and is enforceable until the tax obligation is paid. In making this argument, NTF relies upon OCGA § 48-2-56 (a), which states that except as otherwise provided, liens for all taxes arise at the time the taxes become due, and "shall cover all property in which the taxpayer has an interest from the date the lien arises until such taxes are paid." What NTF overlooks, however, is that after the barment statutes were invoked and the redemption period expired, the taxpayer no longer had any interest in the subject property. As explained above, the delinquent taxpayer, as well as all lienholders, could redeem the property from Harpagon until it gave notice under the barment statutes and the redemption period expired. Harpagon's valid notice and invocation of the barment statutes, however, "terminated, foreclosed, divested, and forever barred" all parties from redeeming the property. At that point, the taxpayer no longer had an interest in the property.[14] Because NTF's tax lien covers only "property in which the taxpayer has [an] interest,"[15] once the taxpayer's right of redemption terminated, NTF's lien was divested from and could no longer be enforced against the property.[16]

As explained above, following a tax sale, the holder of a competing tax lien has two options — it may either file a claim to collect against any proceeds from the sale, or it may assert its rights following the tax sale via a statutory claim for redemption, in which case it obtains a first priority lien on the property, which it may then enforce by levy and sale. With these two options, the legislature has ensured that holders of competing tax liens can take adequate steps to protect their interest in property sold at a tax sale to another lienholder. What a competing tax lienholder may not do after a tax sale, however, is decline to pursue either of these statutory options, receive notice under the barment statutes that its rights of redemption will soon terminate, allow the redemption period to mature and pass, and then continue to assert its lien against the property. When read as a whole, our statutory scheme simply does not provide for such a course of action.

While Code section 48-2-56 (a) does state (in part) that tax liens cover property in which the taxpayer has an interest from the time

---

[14] See *Hill v. Mayor &c. of Savannah*, 233 Ga. App. 742, 743 (505 SE2d 35) (1998).

[15] OCGA § 48-2-56 (a).

[16] *Forrester v. Lowe*, 192 Ga. at 476 (after expiration of the redemption period and proper notice under the barment statutes "the [original] owner and all other parties authorized by law to redeem [the property] lost their redemption rights and **ceased to have any interest in the land**."). As noted above, though, tax liens extend not only to the property giving rise to the tax obligation, but also to all other property owned by the taxpayer. OCGA § 48-2-56 (a). Hence, NTF may seek to recover by levying upon the delinquent taxpayer's other property. (We note that our ruling today concerning the divestment of tax liens does not apply to situations where there has been no tax sale of the property at issue.)

the lien arises until the taxes are paid,[17] it does not state that tax liens are immune from divestment under the barment statutes. By their terms, the statutes divest the redemption rights of "all persons having . . . any right, title, or interest in, **or lien upon**" property.[18] When such divestment occurs, the tax lienholder's interest in the property is foreclosed and it can no longer seek to redeem or levy against that property in order to collect the taxes owed.

Were we to conclude otherwise, we would permit tax liens, once they attach to a particular piece of property, to survive in perpetuity until the tax obligations are paid in full. If that were true, and if the taxes remained unpaid, the same piece of property could be sold at numerous sheriff's sales by a long succession of tax lienholders, and none of the purchasers could obtain good title unless, in addition to the tax sale purchase price, the purchaser also paid off all existing tax liens (including liens for income taxes, sales taxes, municipal taxes, excise taxes, etc.). Furthermore, if all tax liens survive in perpetuity until paid, and if the total amount of such liens exceeds the property's fair market value, then the property would become essentially unmarketable. While our government obviously has a strong interest in seeing that tax liens are paid, it also has a compelling interest in ensuring that there is a mechanism by which tax deeds may mature into unencumbered and marketable fee simple titles. Accordingly, in addition to the statutory analysis discussed above, there are compelling public policy considerations that support our decision as well.

In summation, under our statutory scheme, where property is encumbered by competing tax liens and one lienholder levies upon the property and obtains a tax deed to it, holders of competing tax liens may either seek to collect from the tax sale proceeds or may assert their rights to redeem the property from the tax sale purchaser. If, however, the tax sale purchaser gives valid notice under the barment statutes and the competing tax lienholder allows the redemption period to mature and pass without taking any action, its lien is divested from the property and no longer encumbers the tax sale purchaser's title interest.

4. This Court may affirm the judgment of a lower court so long as it is right for any reason, even if it is based on erroneous reasoning.[19] As explained in Division 2 above, the trial court erred by accepting the special master's conclusion that the tax sale, standing alone,

---

[17] See notes 14-16, supra, and accompanying text.
[18] OCGA § 48-4-45 (a) (1) (C) (emphasis supplied).
[19] *Shadix v. Carroll County*, 274 Ga. 560, 565 (554 SE2d 465) (2001). *City of Gainesville v. Dodd*, 275 Ga. 834 (573 SE2d 369) (2002), is inapplicable to this appeal as, this being an equity case, the trial court sat as the trier of fact. Id., 275 Ga. at 838, n. 3.

divested NTF's lien from the property. As explained in Division 3 above, the special master's analysis was incomplete — it was the tax sale *combined with* the giving of notice under the barment statutes and the running of the redemption period that divested NTF's lien. However, even though the trial court's ruling was based upon an insufficient analysis, it was nonetheless correct and is hereby affirmed under the "right for any reason" rule.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 15, 2003.

*Miller & Martin, Geoffrey H. Cederholm, Donna J. Nance, Kerry A. Lunz,* for appellant.

*Proctor & Chambers, Robert J. Proctor, Bradley A. Hutchins, Janet S. Todd, Thurbert E. Baker, Attorney General, Daniel M. Formby, Deputy Attorney General, Vernitia A. Shannon, Jo Avery,* for appellees.