A05A0372. GEORGIA LIEN SERVICES, INC. v. BARRETT.
(613 SE2d 180)

BERNES, Judge.

Georgia Lien Services, Inc. appeals from an order dismissing its money rule petition seeking excess funds held by the Fulton County Sheriff's Department for the tax sale of certain real property.[1] Although Georgia Lien Services raises several enumerations of error on appeal, our analyses of two of its contentions are dispositive of this case. First, Georgia Lien Services argues that the trial court erred in granting the sheriff's motion to dismiss because it obtained an interest in the excess funds by acquiring a quitclaim deed from the delinquent taxpayer who had owned the subject real property. Alternatively, Georgia Lien Services argues that the sheriff waived any argument she may have had that the quitclaim deed was insufficient to convey an interest in the excess funds because a county attorney purportedly gave incorrect legal advice to the company. Finding these arguments unpersuasive, we affirm.

The underlying facts are not in dispute. On May 1, 2001, deputies from the Fulton County Sheriff's Department conducted a tax sale of

---

[1] The Supreme Court of Georgia transferred Georgia Lien Services' appeal to this Court.

certain real property pursuant to a levy for unpaid taxes in accordance with the procedures set forth in OCGA § 48-4-1 et seq. At the sale, the deputies conveyed the property to a third party company, and a tax deed subsequently was issued to that party documenting the sale. After the relevant taxes and costs of conducting the sale were paid, the excess funds generated from the sale were deposited with the sheriff's department. The sheriff's department subsequently sent notice to the delinquent taxpayer informing him that he was entitled to receive the excess funds, but he never filed an application to receive the funds.

Over two years after the tax sale, in July 2003, Georgia Lien Services acquired a quitclaim deed from the delinquent taxpayer. The quitclaim deed stated: "The purpose of this quitclaim deed is to give the grantee all the rights, entitlements, and obligations that grantor may have in the property, including but not limited to any rights, entitlements, or obligations under that certain tax deed recorded at deed book 30700, page 56." On August 29, 2003, Georgia Lien Services applied to obtain the excess funds from the sheriff's department. After reviewing the application, the sheriff's department concluded that Georgia Lien Services was not the party entitled to the excess funds and denied the application. Georgia Lien Services then filed its petition for a money rule judgment under OCGA § 15-13-3, demanding that the sheriff hand over the excess funds and pay its attorney fees and costs. The sheriff moved to dismiss Georgia Lien Services' petition, and the superior court granted the sheriff's motion, concluding that the company had not acquired an interest in the excess funds by obtaining the quitclaim deed to the subject property. Georgia Lien Services now appeals.

1. We review de novo a trial court's ruling on a motion to dismiss. *Cook v. Regional Communications*, 244 Ga. App. 869, 870 (539 SE2d 171) (2000). Georgia Lien Services argues that it obtained an interest in the excess funds from the tax sale when it acquired the quitclaim deed in 2003. It is true that because the right to excess funds from a tax sale is freely alienable, the delinquent taxpayer was entitled to convey his interest in the excess funds to a third party.[2] *Barrett v. Marathon Investment Corp.*, 268 Ga. App. 196, 198 (1) (601 SE2d 516) (2004). However, the issue here is whether the taxpayer actually conveyed that interest to Georgia Lien Services by way of the quitclaim deed. We conclude that he did not.

The general rule is that a quitclaim deed conveys to the grantee only such interest as the grantor has in *real property*. *Horn v. Gilley*,

___

[2] The sheriff does not contest that the taxpayer in this case, as owner of the subject real property at the time of the tax sale, was entitled to the excess funds in the first instance.

263 Ga. 104, 105 (1) (428 SE2d 568) (1993). And, after a tax sale, the record owner of the real property at the time of the sale loses his interest in the subject real property, instead only retaining a right to redeem the property for a limited period until the tax sale purchaser properly invokes the state barment statutes, OCGA § 48-4-40 et seq. *Nat. Tax Funding v. Harpagon Co.*, 277 Ga. 41, 42-43 (1) (586 SE2d 235) (2003). Once the right to redemption has been barred, as it has in the instant case, the former record owner ceases to have any interest in the real property at issue. Id. at 44 (3). As such, at the time the delinquent taxpayer conveyed the quitclaim deed in 2003, he no longer had an interest in the real property at issue that he could transfer by way of the quitclaim deed to Georgia Lien Services.

Furthermore, the taxpayer's interest in the excess funds was not even an interest in real property, but rather an interest in money generated from the sale of the property. Accordingly, an assignment contract, rather than a quitclaim deed, would have been the preferred instrument for conveying such an interest. Nevertheless, even assuming a quitclaim deed can be used to convey an interest in excess funds from a tax sale, we conclude that the language contained in the quitclaim deed at issue here was insufficient to convey such an interest.[3] The quitclaim deed acquired by Georgia Lien Services does not purport to transfer an interest in excess funds from the tax sale, but rather only purports to transfer an interest in the real property itself. While the quitclaim deed does provide for the transfer of any "rights" or "entitlements" created "under th[e] ... tax deed," the rights or entitlements created under a tax deed run only to the purchaser of the real property at the tax sale, whom the deed vests with a fee interest in the real property. *Nat. Tax Funding*, 277 Ga. at 43 (1). It follows that the language of the quitclaim deed cannot be construed as conveying an interest in the excess funds.[4] Therefore, Georgia Lien Services was not entitled to obtain those funds from the sheriff's department.

---

[3] Georgia Lien Services relies on *Marathon Investment Corp.*, 268 Ga. App. at 198 (1), (2), to support its position that the quitclaim deed it received from the delinquent taxpayer conveyed the excess funds. However, in that case, we did not resolve under what circumstances, if any, a quitclaim deed can be construed as conveying an interest in excess funds. Rather, we noted that there was no transcript of the hearing or copy of the quitclaim deed in the record on appeal, and so we were required to presume that there was sufficient evidence to support the trial court's grant of Marathon's money rule petition. Id. at 198 (2).

[4] When excess funds are generated from a tax sale, the sheriff serves as a fiduciary of the delinquent taxpayer who owned the property before the sale and holds the funds for his or her benefit. *Alexander Investment Group v. Jarvis*, 263 Ga. 489, 491-492 (2) (435 SE2d 609) (1993). In light of this fiduciary relationship, it is particularly important that contractual language clearly convey the delinquent taxpayer's intent to transfer his right to the excess funds.

2. Georgia Lien Services next contends that the sheriff waived any argument she had that the quitclaim deed did not convey an interest in the excess funds because a county attorney provided the company with inaccurate legal advice. Specifically, Georgia Lien Services contends that the county attorney advised that "you need to be very clear in your Quitclaim Deed as to what you are acquiring" if seeking to obtain excess funds through such a deed. Assuming that the county attorney's advice could be construed as suggesting that a quitclaim deed may be used to convey excess funds from a tax sale, that advice, even if incorrect, has no effect on the outcome here. Georgia Lien Services did not heed the county attorney's admonition; it failed to include specific language conveying the delinquent tax-payer's interest in the excess funds to Georgia Lien Services. As such, Georgia Lien Services cannot now claim to have relied to its detriment on advice that it did not properly follow.

Furthermore, reliance on inaccurate legal advice from a government official, even if the official acted negligently, is not a ground for waiver or estoppel against the state or a local government. See *Ben Hill County Bd. of Ed. v. Davis*, 270 Ga. 452, 453 (2) (510 SE2d 826) (1999) (reliance upon misinformation provided by agent of school board concerning school board seat boundaries was not ground for estoppel against school board); *Atlanta Hospitality Workers v. City of Atlanta*, 247 Ga. App. 650, 652 (2), n. 3 (545 SE2d 49) (2001) (deficiency notice issued by mayor's designee allegedly containing inaccurate information concerning appellate procedures could not serve as basis for estoppel against city); *P. C. Gailey Contractors v. Exxon Co., U. S. A.*, 143 Ga. App. 827, 828-829 (2) (240 SE2d 208) (1977) (reliance upon alleged erroneous legal advice provided by agents of Department of Revenue not a ground for estoppel against state). The state and its subdivisions are bound only by federal and state law, "and everyone must take notice thereof and recognize that public administrative officers cannot change the laws." *P. C. Gailey Contractors*, 143 Ga. App. at 829 (2). See also *Corey Outdoor Advertising v. Bd. of Zoning Adjustments*, 254 Ga. 221, 224 (3) (327 SE2d 178) (1985). For these reasons, we conclude that Georgia Lien Services' waiver argument is unavailing.

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED APRIL 6, 2005.

*M. McNeill Holloway III*, for appellant.
*Vernitia A. Shannon, John A. Ayoub*, for appellee.