**THIRD DIVISION
GOBEIL,
COOMER and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**March 12, 2019**

# In the Court of Appeals of Georgia

A18A1500. GEORGIA HOME APPRAISERS, INC. v. TRINTEC PORTFOLIO SERVICES, LLC.

GOBEIL, Judge.

Georgia Home Appraisers, Inc. ("GHA") appeals from two separate orders of the Cherokee County Superior Court, both of which concern a piece of real property ("the Property") on which Trintec Portfolio Services, LLC ("Trintec") held a first priority lien. GHA contends that the trial court erred in finding that all interested parties had not been provided with notice of the first judicial foreclosure sale of the Property (at which GHA was the high bidder) and in relying on that finding to deny confirmation of the first foreclosure sale. Additionally, GHA argues that the trial court erred in denying GHA's motion to confirm or set aside the second foreclosure

sale of the Property, based on the court's finding that GHA lacked standing to bring such a motion. For reasons explained more fully below, we find no error and affirm.

The facts relevant to this appeal are undisputed and show that the Property is located in Cherokee County, in a residential subdivision known as The Villas at Claremore Lake. In or about May 2011, the Property's then-owner executed a quitclaim deed transferring the property to Bank of America, N. A. ("BOA").[1] On June 2, 2015, the Property was sold at a tax sale to Bay Point Capital Partners, LP. After purchasing the lien held on the Property by The Villas at Claremore Lake Homeowners Association ("the HOA"), Trintec redeemed the property by paying $390,000 to Bay Point and receiving a quitclaim deed of redemption that granted Trintec a first priority lien (also known as a super lien) on the Property.[2] See OCGA

[1] The parties have speculated that the Property was transferred to BOA in lieu of BOA foreclosing on the Property.

[2] Under Georgia law, if a property owner fails to pay county property taxes, the county may conduct a sale of the property to satisfy the unpaid taxes. See OCGA § 48-4-1. After the tax sale, any party holding an interest in or a lien on the property may redeem the property by paying to the tax sale purchaser the purchase price plus any taxes paid and interest thereon. See OCGA § 48-4-42. If a creditor of the original property owner redeems the property, the amount paid by the redeeming creditor becomes a first lien on the property. See OCGA § 48-4-43. The redeeming creditor then has a first priority to repayment – i.e., a "super lien" – in the amount of the redemption price. Id. One who holds a super lien may proceed to foreclose against the property to satisfy that lien. See *National Tax Funding, L. P. v. Harpagon Co.*, 277

§ 48-4-43. Trintec then filed a complaint for judicial foreclosure in the Cherokee County Superior Court (the "foreclosure action"), seeking to foreclose on its lien in equity.

In the foreclosure action, Trintec served process on all entities with an interest in the property, including HSBC Bank USA, N. A., FIA Card Services, N. A., BOA, the HOA, and Nationstar Mortgage, LLC. Neither HSBC Bank nor FIA Card Services filed an answer and therefore went into irrevocable default. BOA and the HOA each signed a consent order stating that it had no objection to the foreclosure sale of the Property. The consent order as to BOA dismissed BOA from the litigation and relieved it from filing any further pleadings or making any further appearances. The trial court thereafter entered a final consent order, agreed to by Trintec and Nationstar Mortgage, that established a first priority lien in favor of Trintec in the amount of $390,000, plus prejudgment interest from June 25, 2015; ordered the Cherokee County Tax Commissioner to pay Trintec $316,052.79; and stated that Trintec was entitled to foreclose on the balance of the lien "by conducting a public sale of the Property on the Cherokee County Courthouse steps during the legal hours of sale, after providing notice as [provided for in the order], and auctioning the Property to

Ga. 41, 43 (1) (586 SE2d 235) (2003).

3

the highest bidder." With respect to notice, the order provided that "[p]rior to conducting the foreclosure sale, [Trintec] must advertise notice of the foreclosure sale in *The Cherokee Tribune* once per week for four weeks preceding the foreclosure sale."

Trintec advertised the sale as required by the final consent order, but otherwise did not provide notice of the sale to any other party with an interest in the Property. At the first sale, which took place on January 5, 2016, GHA purchased the Property with a high bid of $73,948. At the time of the first sale, GHA provided Trintec with two cashier's checks totaling $75,000.[3]

On February 17, 2016, Trintec filed a report of defective sale in the foreclosure action and sought an order setting aside the first sale and allowing Trintec to resell the property. In support of Trintec's motion for resale, its attorney submitted an affidavit in which he stated that as a result of an inadvertent error, no notice of the sale was given to the owner of the Property (BOA) or any other entity with an interest in the Property. The attorney further averred that because Trintec believed such notice

---

[3] It is undisputed that the amount of GHA's bid was sufficient to reimburse Trintec the amount it was still owed on its lien.

was required by law,[4] Trintec had rescinded the first sale on January 12, 2016, pursuant to OCGA § 9-13-172.1.[5]

Before the trial court ruled on Trintec's motion for resale in the foreclosure action, GHA filed the current action against Trintec seeking to quiet title to the Property (the "quiet title action"). GHA sought specific performance of the first sale and also asserted claims for lost profits, punitive damages, and attorney fees and costs. The trial court entered a consent order in the quiet title action, pursuant to which the parties agreed that: (1) the court would hold an evidentiary hearing on the confirmation of the first sale; (2) after that hearing, the court would either confirm the sale and issue an order conveying title to GHA or deny confirmation and order

---

[4] In its motion, Trintec asserted that such notice was required by OCGA § 9-13-13. That statute provides that in "cases of levying on land, written notice of the levy must be given personally or delivered by certified mail or statutory overnight delivery to the tenant in possession and to the defendant if not in possession." OCGA § 9-13-13 (a). As the trial court implicitly recognized, however, OCGA § 9-13-13 is inapplicable to this case, as this case involves a judicial foreclosure in equity, and not a levy.

[5] This statute does not authorize rescission, but instead serves to limit the damages a buyer may recover in the event of a rescission, where the rescission is based on, inter alia, "[t]he statutory requirements for the sale not being fulfilled." OCGA § 9-13-172.1 (d) (1).

Trintec to conduct a resale; and (3) the parties would waive any remaining claims they had in the quiet title action

After a hearing at which the parties stipulated to the facts, the trial court denied GHA's petition to quiet title and entered an order authorizing Trintec to conduct a second sale of the Property. In that order, the court found that no notice of the first sale had been provided to the owner or any other entity with an interest in the Property. Accordingly, exercising its authority under OCGA § 23-4-35, the trial court ordered that the property be resold at a second foreclosure sale. With respect to notice, the order stated: "Prior to conducting the foreclosure sale, Trintec must cause notice of the sale to be advertised in *The Cherokee Tribune* once per week for four weeks preceding the foreclosure sale. Trintec shall also give all parties 30 days prior written notice of such sale." Additionally, the order provided that the trial court "shall retain jurisdiction over this matter to direct the disbursal of any cash proceeds generated from the foreclosure over and above the amounts necessary to satisfy the sums owed Trintec." The court certified its order for immediate review, and GHA filed an application for an interlocutory appeal, which this Court denied.

A second judicial foreclosure sale occurred on October 3, 2017, with the property selling to a third party for approximately $275,000.[6] After learning from Trintec's attorney that Trintec did not intend to seek a judicial confirmation of the second sale, GHA filed a motion in the quiet title action to set aside or confirm the second sale. GHA argued that because the resale was ordered pursuant to OCGA § 23-4-35, and because the trial court had retained jurisdiction over the case to direct the disbursement of the sale proceeds, confirmation of the sale was required. Following a hearing, the trial court denied GHA's motion, finding that GHA did not have standing to seek the relief in question. This appeal followed.[7]

---

[6] GHA did not purchase the Property at the second sale.

[7] It appears from the hearing on GHA's motion to confirm or set aside the second sale that, despite its prior ruling that it would retain jurisdiction of the case to oversee the disbursement of funds generated from the second sale, the trial court was declining to do anything further in this case. Accordingly, we view the trial court's order denying GHA's motion as the final order in this case. See *Standridge v. Spillers*, 263 Ga. App. 401, 403 (1) (587 SE2d 862) (2003) ("even though an order does not specify that it is a grant of final judgment, it nevertheless constitutes a final judgment . . . where it leaves no issues remaining to be resolved, constitutes the court's final ruling on the merits of the action, and leaves the parties with no further recourse in the trial court") (citation and punctuation omitted).

7

1. In its first enumeration of error, GHA asserts that the trial court erred in finding that the first sale should be set aside based upon a lack of notice to all interested parties. We disagree.

Unlike non-judicial foreclosure sales, judicial sales of property are usually instituted by a party having the right to foreclose who seeks an order allowing or requiring the sale of the property – i.e., a party who seeks equitable relief. See OCGA § 23-4-20 ("every person who is remediless elsewhere may claim the protection and assistance of equity to enforce any right recognized by the law"). After such an order is obtained, the sale of the property is governed primarily by the judicial sales statute, OCGA § 9-13-140, et seq. And under both that statute and the statute dealing with claims in equity (OCGA § 23-1-1, et seq.), a trial court is afforded broad discretion either to confirm, deny confirmation of, or set aside a judicial sale of property. Specifically, the equity statute provides that judicial sales "shall not be consummated until confirmed" by the trial court, which "has a large discretion vested in [it] in reference thereto." OCGA § 23-4-35. Moreover, the judicial sales statute vests courts with "full power over their officers making execution sales." OCGA § 9-13-172. And whenever a "court is satisfied that a sale made under process is infected with fraud, irregularity, or error to the injury of either party, the court shall set aside the sale." Id.

With respect to notice, the judicial sales statute provides:

> The sheriff, coroner, or other officer shall publish weekly for four weeks in the legal organ for the county, or if there is no newspaper designated as such, then in the nearest newspaper having the largest general circulation in such county, notice of all sales of land and other property executed by the officer. In the advertisement the officer shall give a full and complete description of the property to be sold, making known the names of the plaintiff, the defendant, and any person who may be in the possession of the property. In the case of real property, such advertisement shall include the legal description of such real property and may include the street address of such real property, if available, but provided that no foreclosure shall be invalidated by the failure to include a street address or by the insertion of an erroneous street address.

OCGA § 9-13-140 (a).

Relying on this language, GHA argues that the only pre-sale notice required is the advertisement referenced in OCGA § 9-13-140, which is the same notice required by the trial court's order in the foreclosure action. GHA further contends that in cases involving a judicial sale of property, all parties with an interest in the property have received notice of the sale by virtue of the fact that they were parties to the equitable action seeking an order authorizing the sale. Thus, given that the property owner in this case (BOA) and the other, non-defaulting parties having an

9

interest in the property (the HOA and Nationstar) consented to the sale, they had notice of the same. Accordingly, GHA argues that the trial court erred both in finding that the notice requirement had not been met and then relying on that finding to set aside the first sale.

GHA's argument with respect to notice ignores several important facts. First, although they consented to the foreclosure sale, the other interested parties retained their rights in the Property. See *Nat'l Tax Funding, L.P. v. Harpagon Co.*, 277 Ga. 41, 42-43 (1) (586 SE2d 235) (2003). Accordingly, they needed notice of the foreclosure sale to give them an opportunity to protect those rights. Specifically, those parties needed to be given the opportunity to purchase the Property at the foreclosure sale to protect their own junior interest in that asset. And while the interested parties may have conceded Trintec's right to foreclose on its super lien, there is no evidence in the record that any such party waived its right to receive notice of the foreclosure sale.

Furthermore, it does not appear that any party other than Nationstar received a copy of the final order in the foreclosure action. The record shows that the consent order as to BOA relieved it from filing any further pleadings and from making any further appearances in the case. And there is no evidence that BOA or the HOA

10

received a copy of the final order, which was entered after they were no longer parties to the foreclosure action. More importantly, the final order entered in the foreclosure action does not mention the date or location of the sale. Rather, it simply states that the sale shall be publicly advertised. Thus, even if received by all interested parties, that order did not provide those parties with notice of the sale itself.

Bearing the foregoing in mind, we turn to the question of whether the trial court abused its discretion in finding that the lack of notice to interested parties meant the first sale was "infected with . . . error to the injury of [any] party." OCGA § 9-13-172. In deciding this question, we note that the United States Supreme Court has held that

> [n]otice by mail or other means as certain to ensure actual notice *is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party*, whether unlettered or well versed in commercial practice, if [that party's] name and address are reasonably ascertainable.

*Mennonite Board of Missions v. Adams*, 462 U.S. 791, 800 (II) (103 SCt 2706, 77 LEd2d 180) (1983) (emphasis supplied) (striking down as unconstitutional that part of an Indiana statute providing that a mortgagee of property to be sold at a tax sale could receive notice of the sale through publication; as a "mortgagee clearly has a

11

legally protected property interest, he is entitled to notice reasonably calculated to apprise him of a pending tax sale"). Thus, where a party has a substantial interest in property that may be affected by sale of that property, notice of that sale "by publication . . . is not sufficient to meet the requirements of due process." *Funderburke v. Kellet* , 257 Ga. 822, 823 (1) (364 SE2d 845) (1988) (holding that former OCGA § 48-4-45 violated due process to the extent it allowed the notice required to foreclose a property owner's right to redeem property sold at a tax sale to be made only by publication). See also, *Hamilton v. Renewed Hope, Inc.*, 277 Ga. 465, 466 (589 SE2d 81) (2003) (to satisfy due process, a tax sale purchaser seeking to foreclose the property owner's right of redemption must, "before resorting to [notice by publication]," "make reasonably diligent efforts beyond the use of tax and real estate records . . . to ascertain the address of the [property owner]" and provide that owner with actual, written notice).

Here, we note that a judicial foreclosure sale, like a tax sale or an action for closing a property owner's right to redeem property sold at such a sale, constitutes "a proceeding that [would] adversely affect the . . . property interests" of BOA (as the owner of the Property) and the HOA and Nationstar (as lien holders against the Property). Thus, due process required that BOA, the HOA, and Nationstar all receive

12

actual notice of that sale. Accordingly, we find no error in the trial court's conclusion that the first sale was tainted by an error in the notification process that failed to protect the due process rights of all parties with an interest in the property. See OCGA § 9-13-172. And given this finding, the trial court did not abuse its discretion in refusing to confirm the first sale and instead setting it aside. See *Chua v. Johnson*, 336 Ga. App. 298, 299 (784 SE2d 449) (2016) ( "an abuse of discretion . . . occurs where the trial court's ruling is unsupported by any evidence of record or where that ruling misstates or misapplies the relevant law") (citation and punctuation omitted).

2. GHA further asserts that the trial court erred in finding that it lacked standing to seek a set aside or confirmation of the second sale. Specifically, GHA argues that because the trial court retained jurisdiction over the case to oversee the disbursal of the funds from the second sale, the case remained pending and, as a party to the litigation, GHA could seek the relief in question. Again, we disagree.

In challenging the trial court's decision as to standing, GHA makes a cogent argument that Trintec and/or the trial court failed to comply with the relevant statutes following the second sale.[8] Standing, however, "focuses on the party seeking relief

---

[8] For example, as the trial court acknowledged in its order setting aside the first sale, both sales were conducted under decrees in equity. And the law provides that "[s]uch sales shall not be consummated until confirmed by [the trial court]." OCGA

13

and not on the issues the party wishes to have adjudicated." *Atlantic Specialty Ins. Co. v. Lewis*, 341 Ga. App. 838, 845 (1) (c) (802 SE2d 844) (2017) (citation omitted). To have standing, the party seeking relief must demonstrate that: (1) it has personally suffered some actual or threatened injury (an "injury in fact"); (2) the injury is causally connected to the challenged wrong; and (3) a favorable decision is likely to redress the injury. See *Granite State Outdoor Advertising v. City of Roswell*, 283 Ga. 417, 418 (1) (658 SE2d 587) (2008); *Center for a Sustainable Coast v. Turner*, 324 Ga. App. 762, 764 (751 SE2d 555) (2013). Here, GHA has no ownership or other interest in the Property and, as reflected in the consent order, it has waived all claims

§ 23-4-35. Given this statutory provision, our Supreme Court has held that a judicial sale "is not valid or binding, and confer[s] no right to the property, until confirmed by the court. [Thus], [t]he accepted bidder acquires . . . no independent right to have his purchase completed, but is merely a preferred proposer, until confirmation of the sale by the court[.]" *Leggett v. Ogden*, 248 Ga. 403, 405 (2) (284 SE2d 1) (1981) Here, however, Trintec did not seek a confirmation and the trial court announced at the hearing on GHA's motion that it did not intend to consider confirmation. And as that order further recognized, under Georgia law, any funds realized from the second sale that exceeded the amount owed Trintec had to be disbursed to other lien holders on the property. See OCGA § 48-4-43 (the amount paid by a redeeming creditor of a tax-sale property "shall constitute a first lien on the property and . . . shall be repaid prior to *any other claims* upon the property" (emphasis supplied); *DLT List, LLC v. M7VEN Supportive Housing & Dev. Group*, 301 Ga. 131, 134 (2) (800 SE2d 362) (2017). It appears from the record that excess funds were realized, but there is no indication as to how those excess funds were disbursed, and it does not appear that the trial court oversaw any such disbursement.

for damages resulting from Trintec's rescission of the first sale. Accordingly, GHA cannot demonstrate that it will suffer injury if the second sale is neither confirmed nor set aside and the trial court found correctly that GHA lacked standing to seek that relief.

For the reasons set forth above, we affirm the order of the trial court setting aside the first sale of the Property and ordering its resale, as well as the order denying GHA's motion to confirm or set aside the second sale of the Property.

*Judgment affirmed. Hodges, J., concurs. Coomer, J., concurs in judgment only. \**

**\*   THIS OPINION IS PHYSICAL PRECEDENT ONLY.   COURT OF APPEALS RULE 33.2(a).**

15