**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**August 25, 2023**

# In the Court of Appeals of Georgia

A23A1145. FLAT CREEK FALLS, LLC v. LABAT, SOLELY IN
  HIS CAPACITY AS SHERIFF OF FULTON COUNTY et al.

A23A1146. GREEN TURNKEY CORPORATION v. CITY OF
  ATLANTA.

BROWN, Judge.

In these consolidated appeals filed by the owners of separate properties sold

at a tax sale, Flat Creek Falls, LLC and Green Turnkey Corporation ("the property

owners"), we must determine whether excess funds after the tax sale may be used to

pay demolition liens filed by the City of Atlanta ("the City") on the real property

before the tax sale. Relying primarily upon the Supreme Court of Georgia's opinion

in *DLT List, LLC v. M7VEN Supportive Housing and Dev. Group*, 301 Ga. 131 (800

SE2d 362) (2017), the property owners contend that the trial court erred in "awarding

excess tax sale funds, which are personal property, to pay for the City's demolition lien that attached only to real property." We agree.

*Flat Creek Falls, LLC Property (Case No. A23A1145)*

On May 15, 2015, the City of Atlanta filed a demolition lien against real property located at 467 Lindsay Street, NW. The record shows that Joseph Lewis was the record owner of the property at the time the lien was filed and at the time of a tax sale conducted by the Fulton County Sheriff and held on March 2, 2021.[1] Over one year after the tax sale, on March 14, 2022, a superior court judge issued a quiet title order vesting Flat Creek Falls, LLC (hereinafter "Flat Creek"), with fee simple title in the property, subject only to outstanding ad valorem taxes and the City of Atlanta's demolition lien.

On September 6, 2022, the Fulton County Sheriff filed an interpleader petition for excess funds generated in the tax sale. Following a hearing,[2] Fulton County Superior Court Judge Shukura Ingram ordered that the City's demolition lien took priority over Flat Creek's claim to the excess funds because the City's lien was filed before the tax sale. She concluded that the Supreme Court of Georgia's opinion in

[1] Ownership Avenue purchased the property at the tax sale.

[2] A transcript of this hearing is not included in the record before us.

*DLT List* was factually distinguishable and that its holding did not apply because it addressed only whether a redeeming creditor following a tax sale has first priority to excess funds resulting from a tax sale.

*Green Turnkey Corporation Property (Case No. A23A1146)*

On May 12, 2016, the City of Atlanta filed a demolition lien against real property located at 28 Johnson Road, NW. The record shows that Green Turnkey Corporation owned the property at the time the lien was filed and at the time of a tax sale held on March 2, 2021.[3]

On April 4, 2022, over one year after the tax sale, the Fulton County Sheriff filed an interpleader petition for excess funds generated in the tax sale. Following a hearing,[4] Fulton County Superior Court Judge Craig Schwall ordered the release of the excess funds to the City of Atlanta in partial payment of its demolition lien. Similar to Judge Shukura, he concluded that the Supreme Court of Georgia's opinion in *DLT List* was "not on point."

*Analysis*

---

[3] Deed Co, LLC purchased the property at the tax sale.

[4] A transcript of this hearing is not included in the record before us.

Before turning to the Supreme Court of Georgia's opinion in *DLT List*, we will examine the legal framework for tax sales in Georgia.

> All owners of non-exempt real and tangible personal property are subject to taxation on the property's fair market value as of January first of each year. In order to secure payment of these taxes when they fall delinquent, the law creates a lien which extends not only to the property giving rise to the tax obligation, but also to all other property owned by the taxpayer. Generally, a lien for delinquent ad valorem taxes arises at the time the taxes become due and unpaid, and covers all property in which the taxpayer has any interest from the date the lien arises until such taxes are paid. When taxes are not paid, the Tax Commissioner is authorized to issue a writ of fieri facias (or tax execution), which is a directive to the appropriate officer (often the sheriff) to levy upon the property, sell it and collect the unpaid taxes. Following a tax sale, after the payment of taxes, costs, and other expenses, any excess proceeds may be claimed by the parties entitled to receive them, including those who hold other liens against the property.

(Citations and punctuation omitted.) *Nat. Tax Funding v. Harpagon Co.*, 277 Ga. 41, 42 (1) (586 SE2d 235) (2003). Pursuant to OCGA § 48-4-1 (a) (1), a sheriff may levy "upon real or personal property." Following a tax sale,

> the delinquent taxpayer or any other party holding an interest in or lien on the property may redeem the property by paying to the tax sale purchaser the purchase price plus any taxes paid and interest. If the

4

property is redeemed, the tax sale is essentially rescinded and a quitclaim deed is executed by the tax sale purchaser back to the owner of the property at the time of levy and sale. If a creditor of the original taxpayer redeems the property, the amount paid by the redeeming creditor becomes a first lien on the property. The redeeming creditor then has first priority to repayment — a "super-lien" for the redemption price — and may proceed to foreclose against the property based upon that lien. This right of redemption, however, may be terminated by the tax sale purchaser anytime after one year following the tax sale. After that year has run, the tax sale purchaser may "terminate, foreclose, divest, and forever bar" all rights to redeem the property by giving notice under OCGA § 48-4-40, et seq. ("the barment statutes") to all parties with redemption rights. The barment statutes apply to "all persons having . . . any right, title, or interest in, or lien upon" the subject property. However, until such time as the barment statutes are invoked once the one year redemption period has run, the tax sale purchaser's interest in the property is not exclusive, as the taxpayer and other lienholders retain their rights of redemption. A tax deed vests the purchaser with a defeasible (and, incidentally, taxable) fee interest in the property, but it does not entitle a purchaser to exclusive possession until the right of redemption is terminated.

(Citations and punctuation omitted.) *Nat. Tax Funding*, 277 Ga. at 42-43 (1).

In *DLT List*, the question before the Supreme Court of Georgia was whether a redeeming creditor after a tax sale has first priority claim on excess tax sale funds.

5

301 Ga. at 134 (2). In its analysis of this question, the Supreme Court noted that "excess funds from a tax sale are *personal* property that is separate and distinct from the real property itself." (Emphasis in original.) Id. at 135 (2). Based on its conclusion that "the priority lien acquired by a redeeming creditor is exclusive to real property," it found that the redeeming creditor's lien did not apply to the excess funds from the tax sale. Id. It reasoned that the redeeming creditor's lien was exclusive to real property because

> [t]he plain language of OCGA § 48-4-40 permits the redemption of *real property*, and OCGA § 48-4-43 awards a priority lien to a redeeming creditor that is specific to the *real property* at issue; we are constrained by this language. See OCGA § 48-4-40 (establishing the right to redeem *real property*); OCGA § 48-4-43 (granting redeemer of real property "first lien on *the property*" to be paid "prior to any other claims *upon the property*").

(Emphasis in original.) Id.

In these cases, the property owners assert that the reasoning in *DLT List* also applies to the statute creating the City's demolition lien, OCGA § 41-2-9 (a) (7), because it provides:

> That the amount of the cost of demolition, including all court costs, appraisal fees, administrative costs incurred by the . . . municipal tax

6

collector or city revenue officer, and all other costs necessarily associated with the abatement action, including restoration to grade of the real property after demolition, *shall be a lien against the real property* upon which cost was incurred.

(Emphasis supplied.) While the particular issue decided by the Supreme Court of Georgia in *DLT List* differs from that presented here, its reasoning logically extends to the City's right to the excess funds in this case. Simply put, we cannot conclude that the City has a right to the excess tax funds, which are personal property, when the General Assembly has provided that the City's lien applies only to the real property.[5] See *DLT List*, 301 Ga. at 135. See also *Jackson v. Wellington & Assoc.*, 389 FSupp.3d 1199, 1210-1211 (III) (B) (ii) (N.D. Ga. 2019) (relying on *DLT List* to find that a security deed to real property does not entitle the holder to excess funds from a tax sale). We therefore reverse the trial courts' conclusion to the contrary in both cases before us.[6]

---

[5] In so holding, we note that there is no evidence showing that the City took steps to enforce its liens against the properties pursuant to OCGA § 41-2-9 (b) (3) in the intervening years before the tax sale took place.

[6] We note that the record before us is silent as to whether the properties were redeemed or whether the tax sale purchasers provided a notice of barment under OCGA § 48-4-40 et seq. to the City of Atlanta before the orders currently on appeal were issued. We acknowledge that the City of Atlanta alleged in its answers that

We find no merit in the City's assertion that we should nonetheless conclude that it has a right to the excess funds based upon the statute governing excess tax funds, OCGA § 48-4-5. This statute requires the sheriff to give written notice of the excess funds to "all other parties having any recorded equity interest or claim in such property at the time of the tax sale. . . . The notice shall state that the excess funds are available for distribution to the owner or owners as their interests appear in the order of priority in which their interests exist." OCGA § 48-4-5 (a). This Code provision also provides that when a sheriff files an interpleader action in superior court, the "excess funds shall be distributed by the superior court to the intended parties, including the owner, as their interests appear and in the order of priority in which their interests exist." OCGA § 48-4-5 (b). OCGA § 48-4-5 does not create any substantive legal rights or somehow convert a lien against real property into one that may be satisfied from personal property. Instead, it requires notice and states the

"[t]he remedy of redemption is barred by the City's Charter and Code of Ordinances." But the record before us contains no copy, certified or uncertified, of either. See *Edwards v. City of Warner Robins*, 302 Ga. 381, 382 (1), n.2 (807 SE2d 438) (2017) (city ordinances must be alleged and proven to be considered by Georgia courts); *Allen v. Shepherd*, Ga. App. , n.2 (Case No. A23A0463, decided June 13, 2023). None of the parties briefed the issue of redemption or barment below or on appeal, and the orders before us make no mention of redemption or barment. The lurking issue of the continued existence of the City of Atlanta's lien against the real property is therefore not presently before us.

8

priority of payment for those who have an interest that may be satisfied from the excess funds.

*Judgments reversed. McFadden, P. J., and Markle, J., concur.*